IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE INC., | |
| Plaintiff, | |
| v. | C.A. No. 10-00167-RK |
| HIGH TECH COMPUTER CORP., a/k/a HTC CORP., HTC (B.V.I.) CORP., HTC AMERICA, INC., and EXEDEA, INC., | |
| Defendants. | |

**OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS COUNT VIII OF COMPLAINT PURSUANT TO RULE 12(b)(6) BY DEFENDANTS HIGH TECH COMPUTER CORP., a/k/a HTC CORP., HTC (B.V.I.) CORP., HTC AMERICA, INC., AND EXEDEA, INC.**

*Of Counsel:*

Robert A. Van Nest
Ashok Ramani
Leo L. Lam
Eugene M. Paige
Ajay S. Krishnan
John Bostic
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA  94111-1704
(415) 391-5400

John W. Shaw (#3362) jshaw@ycst.com
Karen L. Pascale (#2903) kpascale@ycst.com
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building
100 West Street, 17th Floor
Wilmington, DE  19899-0391
(302) 571-6600
*Attorneys for Defendants High Tech Computer Corp., a/k/a HTC Corp., HTC (B.V.I.) Corp., HTC America, Inc., and Exedea, Inc.*

Dated:  June 4, 2010

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... ii

I.   NATURE AND STAGE OF PROCEEDINGS ................................................................... 1

II.  SUMMARY OF ARGUMENT ......................................................................................... 2

III. STATEMENT OF FACTS ............................................................................................... 3

     A.   The PTO improperly issued the '453 patent with the wrong set of
        claims. ..................................................................................................................... 3

         1.   The applicant submitted 21 new claims on February 26, 2008. ................. 3

         2.   The 21 claims were amended on March 26, 2008, after which
            the PTO allowed the amended claims. ......................................................... 4

         3.   The PTO published the '453 patent, but erroneously included
            the February 26, 2008 claims, instead of the Allowed Claims
            from the March 26, 2008 nine-page fax. ...................................................... 7

     B.   Understanding that the '453 patent recites the wrong set of claims,
        Apple has requested correction multiple times, which the PTO has yet
        to grant. ................................................................................................................... 8

IV.  ARGUMENT ................................................................................................................... 8

     A.   It is appropriate for the Court to take judicial notice of a patent's file
        history when considering a Federal Rule 12(b)(6) motion to dismiss. ................... 9

     B.   The '453 patent is invalid, and Apple has conceded as much. ............................. 10

     C.   If the PTO were to correct the '453 patent, that would not save Count
        VIII of the Complaint. .......................................................................................... 12

     D.   This Court lacks the authority to correct the patent, at least because the
        correction is not evident on the face of the patent. .............................................. 14

V.   CONCLUSION ............................................................................................................... 16

# TABLE OF AUTHORITIES

*Cases*

*Adrain v. Hypertech, Inc.*,
No. 2:98-CV-37C, 2001 WL 740542 (D. Utah Apr. 18, 2001) ............................................... 13

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) ........................................................................................................... 9

*Baxa Corp. v. Forhealth Technologies, Inc.*,
No. 6:06-cv-0353-Orl-19JGG, 2006 WL 4756455 (M.D. Fla. May 5, 2006) ....................... 10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................................. 9

*Brenner v. Ebbert*,
398 F.2d 762 (D.C. Cir. 1968) ............................................................................................. 11

*BEC Pressure Controls Corp. v. Dwyer Instruments, Inc.*,
380 F. Supp. 1397 (N.D. Ind. 1974) .................................................................................... 11

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
358 F.3d 1371 (Fed. Cir. 2004) ........................................................................................... 14

*Coinstar, Inc. v. Coinbank Automated Systems, Inc.*,
998 F. Supp. 1109 (N.D. Cal. 1998) .................................................................................... 10

*Doe v. SexSearch.com*,
551 F.3d 412 (6th Cir. 2008) ................................................................................................ 9

*Grinnell Corp. v. American Monorail Co.*,
285 F. Supp. 219 (D.S.C. 1967) ........................................................................................... 11

*Group One, Ltd. v. Hallmark Cards, Inc.*,
407 F.3d 1297 (Fed. Cir. 2005) ...................................................................................... 15, 16

*Hoffer v. Microsoft Corp.*,
405 F.3d 1326 (Fed. Cir. 2005) ........................................................................................... 15

*Institutional Investors Group v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009) .................................................................................................. 9

*ISCO Intern., Inc. v. Conductus, Inc.*,
C.A. No. 01-487-GMS, 2002 WL 31498989 (D. Del. Nov. 8, 2002) ..................................... 13

*Kitty Hawk Aircargo, Inc. v. Chao*,
418 F.3d 453 (5th Cir. 2005) ................................................................................................. 9

*Lichoulas v. City of Lowell,*
   555 F.3d 10 (1st Cir. 2009) .......................................................................................... 9

*Linear Technology Corp. v. Micrel, Inc.,*
   524 F. Supp. 2d 1147 (N.D. Cal. 2005) ................................................................. 15, 16

*Ludlow Corp. v. Textile Rubber & Chemical Co., Inc.,*
   636 F.2d 1057 (5th Cir. 1981) .................................................................................... 11

*Maschinenfabrik Rieter, A. G. v. Greenwood Mills,*
   340 F. Supp. 1103 (D.S.C. 1972) ................................................................................ 10

*Mobile Hi-Tech Wheels v. CIA Wheel Group,*
   514 F. Supp. 2d 1172 (C.D. Cal. 2007) ...................................................................... 13

*Novo Industries, L.P. v. Micro Molds Corp.,*
   350 F.3d 1348 (Fed. Cir. 2003).............................................................................. 3, 14

*Oroamerica Inc. v. D & W Jewelry Co., Inc.,*
   10 Fed. Appx. 516 (9th Cir. 2001) ........................................................................... 9, 10

*Papasan v. Allain,*
   478 U.S. 265 (1986) ....................................................................................................... 9

*SDS USA, Inc. v. Ken Specialties, Inc.,*
   No. CIV. 99-133, 2002 WL 31055997 (D.N.J. Aug. 28, 2002) ................................. 13

*Southwest Software, Inc. v. Harlequin Inc.,*
   226 F.3d 1280 (Fed. Cir. 2000).......................................................................... 2, 12, 13

*Sun Microsystems, Inc. v. Network Appliance, Inc.,*
   591 F. Supp. 2d 1069 (N.D. Cal. 2008) ..................................................................... 15

*Superior Fireplace Co. v. Majestic Prods. Co.,*
   270 F.3d 1358 (Fed. Cir. 2001).................................................................................... 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308 S.Ct. 2499 (2007) .................................................................................... 9

### Rules

Federal Rule 12(b)(6).................................................................................................. 3, 9

Federal Rule of Evidence 201(d) ................................................................................... 9

Federal Rule of Evidence 201(b)(2) ............................................................................. 10

## I.   NATURE AND STAGE OF PROCEEDINGS

Plaintiff ("Apple") filed this lawsuit on March 2, 2010 against Defendants High Tech Computer Corp., a/k/a HTC Corp., HTC America, Inc., HTC (B.V.I.) Corp., and Exedea, Inc. (collectively "HTC").  The Complaint alleges that HTC, which creates cutting-edge smart phones in Taiwan, infringes ten Apple patents.

Defendants now move to dismiss Count VIII of the Complaint because the patent asserted to be infringed in that count, United States Patent No. 7,383,453 ("the '453 patent"), is fatally flawed.  The prosecution history reveals that the claims that are recited in the '453 patent—a copy of which is attached to the Complaint—are *not* the claims that the Patent and Trademark Office allowed.  Indeed, they are entirely different.  Thus the '453 patent has no valid claims that can be infringed.

Two motions are currently pending regarding the transfer and consolidation of this case. *First*, on April 9, 2010, HTC filed a motion to transfer both this case (C.A. No. 10-00167-RK, or "the 167 case") and a related action (C.A. No. 10-00166-RK, or "the 166 Case") to the Northern District of California.  (D.I. 9.)  In the related action, currently stayed due to an on-going investigation in the International Trade Commission, Apple alleges infringement of another ten patents by HTC.  The basis for the transfer motion is that the overwhelming weight of the witnesses and evidence in these suits are located either in or much closer to the Northern District of California.  Apple has opposed the transfer motion, and no hearing date has been set.

Second, on May 24, 2010—the same day it filed its opposition to the transfer motion— Apple filed a motion to consolidate the 167 and 166 cases with two suits that Nokia originally brought against Apple (C.A. No. 09-791 and C.A. 09-1002 GMS), and in which Apple has asserted counterclaims.  The Nokia suits are currently assigned to Chief Judge Sleet.  Apple recognizes the conflict between transferring the HTC suits to the Northern District of California

versus consolidating these HTC suits with the Nokia suits before Judge Sleet.  (D.I. 20 at 9, n.9.)

HTC will oppose Apple's motion to consolidate.

## II.   SUMMARY OF ARGUMENT

1.      Count VIII of the Complaint, which alleges infringement of the '453 patent,

should be dismissed because that patent has a fatal defect: all of its claims were published in

error.  Specifically, the PTO never allowed the claims that appear in the printed patent (the

"Printed Claims").  Rather, the PTO allowed a *different* set of claims (the "Allowed Claims")

that never made their way into the printed patent, and printed the '453 patent with the *wrong* set

of claims.   Regardless of whether the fault for this error lies with the PTO, with the applicant, or

with both, the file history of the '453 patent unambiguously shows that the PTO never actually

allowed the Printed Claims, which therefore never could have been validly issued.

2.      In light of this fatal defect, Apple in fact requested multiple Certificates of

Correction from the PTO to replace the Printed Claims with the Allowed Claims.  As of the

filing of this Motion, however, the PTO has not granted Apple's requested corrections.  The

patent was fatally flawed when Apple filed the Complaint, and remains so today.

3.      Even if a Certificate of Correction issues, it cannot cure the defect in Count VIII

of the Complaint.  A Certificate of Correction only has legal effect in "causes…arising" *after* the

Certificate issues.  35 U.S.C. § 254; *Southwest Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280

(Fed. Cir. 2000).  In other words, even if the PTO corrects the claims of the '453 patent at some

future time, that correction cannot be applied retroactively to Count VIII of the Complaint, which

predated the correction.

4.      Nor can this Court correct the defect in this patent.  Although district courts have

a limited common law authority "to correct an error in a patent by interpretation of the patent,"

that authority is confined to situations where the correction is evident on the face of the patent. *Novo Industries, L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003).

5.      Thus, regardless of what the PTO does, Count VIII of the Complaint should be dismissed. The current version of the '453 patent—which contains the Printed Claims—is invalid because the PTO never allowed the Printed Claims. And even if the PTO corrects the '453 patent, that corrected patent cannot be retroactively asserted against HTC. Either way, Count VIII should be dismissed.

## III.    STATEMENT OF FACTS

### A.    The PTO improperly issued the '453 patent with the wrong set of claims.

The '453 patent is titled "Conserving Power by Reducing Voltage Supplied to an Instruction-Processing Portion of a Processor." *See* Complaint (D.I. 1), Ex. H (the '453 patent). At a high level, the stated purpose of the invention is to reduce power consumption in a computer processor by, in response to a signal, entering into a "reduced power mode." Nevertheless, a substantive understanding of the '453 patent is not required to decide this motion.

The '453 patent arose out of Application Number 11/213,215, which was filed on August 25, 2005. '453 patent, Cover Sheet. For the Court's convenience, HTC has attached the entire file history of the '453 patent to its concurrently filed Request for Judicial Notice ("RJN"). As discussed below, judicial notice of a patent's file history is proper in a Motion to Dismiss pursuant to Federal Rule 12(b)(6).

### 1.    The applicant submitted 21 new claims on February 26, 2008.

As of February 25, 2008—roughly two and a half years into the prosecution of the '453 patent—the applicant had submitted 63 claims, some of which had already been cancelled or rejected. Then on February 26, 2008, the applicant filed a "Request for Continued Examination," by which he submitted 21 new claims (numbered 64 through 84). RJN, Ex. B (all entries from February 26, 2008) at 193-202. Three of these claims were independent claims: 64,

71, and 78. The remainder depended from those three claims. The filing made clear that all

previously submitted claims except for claim 48 (*i.e.*, claims 1 through 47 and 49 through 63)

had been cancelled. Claims 64 through 81 of the February 26, 2008 "Request for Continued

Examination" are identical to the claims that would ultimately be recited in the '354 patent,

except for claim numbering (the issued claims are numbered 1 through 21). The PTO, however,

never allowed these claims.

> **2.    The 21 claims were amended on March 26, 2008, after which the PTO allowed the amended claims.**

On April 8, 2008, the PTO issued a Notice of Allowability, which attaches three relevant

documents that explain what happened with the 21 claims the applicant submitted with his

February 26, 2008 filing. RJN, Ex. C (all entries from April 8, 2008).

*First*, a document entitled "Interview Summary" indicates that a telephone interview took

place on March 20, 2008 between the PTO Examiner and the applicant's representative. *Id.* at

213. The Interview Summary reports that if the applicant agreed to cancel claim 48, and amend

independent claims 64, 71, and 78, the application would be "put in condition for allowance."

*Id.* There is no substantive explanation as to the reasons for cancelling claim 48 and amending

the other claims.

*Second*, a document entitled "Examiner's Amendment," shows that the applicant's

claims—namely numbers 64 through 84 that were added on February 26, 2008—had been

amended in accordance with an "attached fax from Applicant's Representative (9 pages, dated

03/26/2008) cancelling claims 1-63 and amending claims 64, 71, 73, and 84." *Id.* at 216. Like

the "Interview Summary," the "Examiner's Amendment" does not explain the basis for the

amendments.

*Third*, the nine-page fax dated March 26, 2008 was attached to the Notice of

Allowability. *Id.* at 231-39. This fax contains the actual amendments that were referenced in the

"Examiner's Amendment." Specifically, each independent claim—*i.e.*, claims 64, 71, and 73—

was amended as follows, with strikethroughs indicating deletions and underlining indicating

additions, exactly as was done in the nine-page fax:

> 64.　(Currently Amended) An instruction-processing system with ~~minimal~~ minimized static power leakage, the instruction-processing system comprising:
>
>> a core with instruction-processing circuitry;
>>
>> an area coupled to the core;
>>
>> a core voltage provided to the core; and
>>
>> an area voltage provided to the area;
>>
>> wherein in a normal operation mode:
>>
>>> a clock signal to the core is active;
>>>
>>> the core voltage is a first value that is sufficient to maintain the state information of the instruction-processing circuitry;
>>>
>>> the core is active;
>>>
>>> the area voltage is a second value that is sufficient to maintain the data stored in the area; and
>>>
>>> the area is active;
>>
>> wherein in a first power-saving mode that ~~is~~ can be exited upon receipt of an interrupt signal:
>>
>>> the clock signal to the core is inactive;
>>>
>>> the core voltage is ~~equal to or greater than the first value~~ sufficient to maintain the state information of the instruction-processing circuitry; and
>>>
>>> the area voltage is ~~equal to or greater than the second value~~ sufficient to maintain the data stored in the area.
>>
>> wherein in a second power-saving mode that can be exited upon receipt of a signal that is not an interrupt signal:
>>
>>> the clock signal to the core is inactive;
>>>
>>> the core voltage is less than the first value; and
>>>
>>> the area voltage is ~~equal to or greater than the second value~~ sufficient to maintain the data stored in the area.

> …

> 71.　(Currently Amended) A method for minimizing static power leakage in an instruction-processing system, wherein the instruction-processing system comprises a core with instruction-processing circuitry, an area coupled to the core, a core voltage provided to the core, and an area voltage provided to the area, the method comprising:
>
>> entering a normal operation mode by:

providing a clock signal to the core;

providing the core with a core voltage ~~that is~~ equal to a first value that is sufficient to maintain the state information of the instruction-processing circuitry;

providing the area with an area voltage ~~that is~~ equal to a second value that is sufficient to maintain the data stored in the area;

entering a first power-saving mode by:

disabling the clock signal to the core;

providing the core with a core voltage that is sufficient to maintain the state information of the instruction-processing circuitry ~~equal to or greater than the first value~~; and

providing the area with an area voltage that is sufficient to maintain the data stored in the area ~~equal to or greater than the second value~~;

exiting the first power-saving mode upon receipt of an interrupt signal;

entering a second power-saving mode by:

disabling the clock signal to the core;

setting the core voltage to a value less than the first value; and

providing the area with an area voltage that is ~~equal to or greater than the second value~~ sufficient to maintain the data stored in the area; and

exiting the second power-saving mode upon receipt of a signal that is not an interrupt signal.

...

78.    (Currently Amended) A computer-readable medium ~~containing data representing~~ storing code which represents an instruction-processing system with ~~minimal~~ minimized static power leakage, the instruction- processing system comprising:

a core with instruction-processing circuitry;

an area coupled to the core;

a core voltage provided to the core; and

an area voltage provided to the area;

wherein in a normal operation mode:

a clock signal to the core is active;

the core voltage is a first value that is sufficient to maintain the state information of the instruction-processing circuitry;

the core is active;

the area voltage is a second value that is sufficient to maintain the data stored in the area; and

the area is active;

wherein in a first power-saving mode that ~~is~~ <u>can be</u> exited upon receipt of an interrupt signal;

> the clock signal to the core is inactive;

> the core voltage is <u>sufficient to maintain the state information of the instruction-processing circuitry</u> ~~equal to or greater than the first value~~; and

> the area voltage is <u>sufficient to maintain the data stored in the area</u> ~~equal to or greater than the second value~~;

wherein in a second power-saving mode that can be exited upon receipt of a signal that is not an interrupt signal:

> the clock signal to the core is inactive;

> the core voltage is less than the first value; and

> the area voltage is <u>sufficient to maintain the data stored in the area</u> ~~equal to or greater than the second value~~.

*Id.* at 233-38.  Again, the nine-page fax does not explain the reasons for the amendments.

The Notice of Allowability issued by the PTO on April 8, 2008 states that claims 64 through 84 were allowed.  Based on the prosecution history, it is clear that the claims that were allowed were the ones that were amended as indicated in the March 26, 2008 fax (*i.e.*, the Allowed Claims), and as quoted in part above.

> **3.   The PTO published the '453 patent, but erroneously included the February 26, 2008 claims, instead of the Allowed Claims from the March 26, 2008 nine-page fax.**

The '453 patent is dated June 3, 2008.  '453 patent, Cover Sheet.  The patent as published, however, contains the language of the claims from the February 26, 2008 submission (*i.e.*, the Printed Claims)—not the amended language of the Allowed Claims.  '453 patent at 5:35-8:20.  It is apparent from the file history that the Printed Claims, which do not contain the amended language, were never allowed by the PTO.  As such, they were printed in error.

**B.     Understanding that the '453 patent recites the wrong set of claims, Apple has requested correction multiple times, which the PTO has yet to grant.**

Realizing this error, on July 17, 2008, Apple filed a Request for a Certificate of Correction.[1]  RJN, Ex. E.  In this Request, Apple specifically requested four pages worth of deletions and additions aimed at bringing the Printed Claims into accord with the Allowed Claims.  *Id.* at 253-56.  Indeed, the Request for a Certificate of Correction attached (1) a copy of the April 8, 2008 Examiner's Amendment, with the reference to the nine-page fax circled (*id.* at 257), and (2) a copy of the nine-page fax from March 26, 2008 that contained the language of the Allowed Claims (*id.* at 259-67).

The PTO still has not granted the corrections that Apple requested.  On August 21, 2008, the PTO declined to fully approve Apple's Request because the Request neglected to include all of the edits necessary to bring the Printed Claims into accord with the Allowed Claims.  *Id.*, Ex. F.  On May 7, 2010—twenty-one months after the PTO had responded to its original Certificate of Correction, and two months after Apple commenced this litigation—Apple submitted a new Request for a Certificate of Correction, this time incorporating the edit that it had previously omitted.  *Id.*, Ex. H.  As of the filing of this Motion, the PTO has not approved Apple's requested corrections.

## IV.     ARGUMENT

Count VIII of the Complaint should be dismissed because the claims recited in the '453 patent were never allowed by the PTO and thus are neither valid nor enforceable.  Apple knows this, which is why it has sought Certificates of Correction.  But even if a Certificate of

---

[1]     For purposes of clarity, the Court should be aware that Apple also requested a separate Certificate of Correction on June 3, 2008, because the Assignee name on the '453 is "Apple, Inc." instead of "APPLE INC."  This separate Request for Certificate of Correction was granted, and duplicate Certificates of Correction appear to have issued on January 13, 2009 and February 17, 2009.  But these separate Certificates of Correction related to Apple's name are not relevant to this motion, except to show that the PTO had been responding to Apple's PTO submissions.

Correction were to issue, it could not cure Count VIII of the Complaint, which Apple asserted

before any correction issued.  Additionally, this Court lacks the authority to correct this defect.

**A.      It is appropriate for the Court to take judicial notice of a patent's file history when considering a Federal Rule 12(b)(6) motion to dismiss.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129

S.Ct. 1937, 1940 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Additionally, "'courts must consider the complaint in its entirety, as well as ... documents

incorporated into the complaint by reference, and matters of which a court may take judicial

notice.'" *Institutional Investors Group v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009) (quoting

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007)); *see*

*also Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986) (noting that matters of public record can be

considered in the context of a motion to dismiss); *Doe v. SexSearch.com*, 551 F.3d 412, 416 (6th

Cir. 2008) (same).

Judicial notice of a patent's file history is appropriate.  Judicial notice is governed by

Federal Rule of Evidence 201.  Rule 201(d) provides that "[a] court shall take judicial notice if

requested by a party and supplied with the necessary information," and Rule 201(b)(2) provides

for judicial notice of facts that are "capable of accurate and ready determination by resort to

sources whose accuracy cannot reasonably be questioned."  This provision provides not only for

judicial notice of court records, but also of administrative proceedings.  *See, e.g., Lichoulas v.*

*City of Lowell*, 555 F.3d 10, 12 at n.1 (1st Cir. 2009) (taking judicial notice of FERC proceedings

in reviewing a dismissal at the pleadings stage); *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d

453, 457 (5th Cir. 2005) (taking judicial notice of an approval reported in the official

administrative agency reporter of the National Mediation Board).  Courts also regularly take

judicial notice of a patent's file history.  *See, e.g., Oroamerica Inc. v. D & W Jewelry Co., Inc.,*

10 Fed. Appx. 516, 517 at n.4 (9th Cir. 2001); *Coinstar, Inc. v. Coinbank Automated Systems, Inc.*, 998 F. Supp. 1109, 1114 (N.D. Cal. 1998); *Baxa Corp. v. Forhealth Technologies, Inc.*, No. 6:06-cv-0353-Orl-19JGG, 2006 WL 4756455 at *1 (M.D. Fla. May 5, 2006). The official file history for the '453 patent can be obtained on the PTO's website through its Public Application Information Retrieval (PAIR) service: *http://portal.uspto.gov/external/portal/pair*.

To evaluate this Motion, the Court need only take judicial notice of three procedural facts from the file history:

(1) The Printed Claims, which were originally submitted to the PTO on February 26, 2008, were never allowed;

(2) The Allowed Claims corresponding to the PTO's final April 8, 2008 Notice of Allowability were submitted by a nine-page fax on March 26, 2008 amending the February 26 claims; and

(3) Apple submitted Requests for a Certificate of Correction on July 17, 2008 and May 7, 2010, which, if granted, would bring the Printed Claims into accord with the Allowed Claims.

These are purely procedural facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. Rule of Evid 201(b)(2). These facts may therefore be considered in this Motion.

**B.      The '453 patent is invalid, and Apple has conceded as much.**

It is a fundamental and indeed statutory premise of the U.S. patent system that the PTO must find that an "applicant is entitled to a patent under the law"—that is, the PTO must allow an applicant's submitted claims—before a valid patent can issue:

> The Director shall cause an examination to be made of the application and the alleged new invention; and if on such examination it appears that the applicant is entitled to a patent under the law, the Commissioner shall issue a patent therefor.

35 U.S.C. § 131; *see also Maschinenfabrik Rieter, A. G. v. Greenwood Mills*, 340 F. Supp. 1103, 1108 (D.S.C. 1972) ("[I]t is the duty of the Patent Office carefully to examine each patent

application in the light of all statutory requirements for patentability and to withhold issuance unless 'it appears that the applicant is entitled to patent under the law.' 35 U.S.C. § 131.") (internal quotations omitted) (quoting *Grinnell Corp. v. American Monorail Co.*, 285 F. Supp. 219, 223 (D.S.C. 1967)).

The requirement that the PTO must first allow claims before they issue is also found in 35 U.S.C. § 151, which is entitled "Issue of Patent":

> *If it appears that applicant is entitled to a patent under the law, a written notice of allowance of the application shall be given or mailed to the applicant.* The notice shall specify a sum, constituting the issue fee....
>
> Upon payment of this sum the patent shall issue, but if payment is not timely made, the application shall be regarded as abandoned.

*Id.* (emphasis added).

The critical prerequisite that the PTO allow submitted claims *before* they issue is also found in other patent law doctrines. For instance, the presumption of validity to which a patent is entitled pursuant to 35 U.S.C. § 282 is premised on a prior allowance of the issued claims by the PTO. *Ludlow Corp. v. Textile Rubber & Chemical Co., Inc.*, 636 F.2d 1057, 1058 (5th Cir. 1981) ("That presumption is based on the acknowledged experience and expertise of the United States Patent Office and recognition that patent approval is a species of administrative determination supported by evidence.").

As such, the PTO lacks the authority to issue patent claims that it has not first allowed, and any such non-allowed claims are invalid. *Cf. BEC Pressure Controls Corp. v. Dwyer Instruments, Inc.*, 380 F. Supp. 1397 (N.D. Ind. 1974) (invalidating a patent pursuant to § 151, because the issue fee was not timely paid, and the PTO did not have the statutory authority to excuse an untimely payment); *Brenner v. Ebbert*, 398 F.2d 762, 764 (D.C. Cir. 1968) (holding that the PTO lacks the authority under § 151 to issue a patent where the issue fee was not timely paid).

Here, the PTO never allowed *any* of the claims recited in the '453 patent. Every single claim that is contained in the copy of the '453 patent attached to the Complaint was altered by the April 2008 Examiner's Amendment, which adopted the changes indicated in the March 26, 2008 nine-page fax. Consequently, none of the Printed Claims were allowed and the '453 patent was improperly issued with the wrong set of claims. As such, the '453 patent is invalid in its entirety.

Moreover, Apple has recognized this defect by filing multiple Requests for a Certificate of Correction. If granted by the PTO, those requested corrections would have replaced the claims in the published version of the '453 patent with the Allowed Claims. Apple therefore cannot deny the defect in the '453 patent.

**C.     If the PTO were to correct the '453 patent, that would not save Count VIII of the Complaint.**

Even if the PTO were to grant Apple's Request for a Certificate of Correction (which it has not), the correction would not apply retroactively to Count VIII, which Apple asserted *before* the correction issued. This is so even if the PTO was completely at fault for the erroneous publication of the '453 patent. 35 U.S.C. § 254, titled "Certificate of Correction of Patent and Trademark Office Mistake," provides:

> Whenever a mistake in a patent, incurred through the fault of the Patent and Trademark Office, is clearly disclosed by the records of the Office, the Director may issue a certificate of correction stating the fact and nature of such mistake, under seal, without charge, to be recorded in the records of patents. A printed copy thereof shall be attached to each printed copy of the patent, and such certificate shall be considered as part of the original patent. Every such patent, together with such certificate, shall have the same effect and operation in law on the trial of actions **for causes thereafter arising** as if the same had been originally issued in such corrected form. The Director may issue a corrected patent without charge in lieu of and with like effect as a certificate of correction.

35 U.S.C. § 254 (emphasis added).

In *Southwest Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280 (Fed. Cir. 2000), the Federal Circuit interpreted § 254 to provide that "for causes arising before its issuance, the

YCST01: 9749861.1                 12                 069415.1001

certificate of correction is not effective." *Id.* at 1295. The Federal Circuit reasoned that this interpretation is supported by the statutory language, and by the following public policy:

> Until the PTO issues a certificate of correction pursuant to 35 U.S.C. § 254…such a claim would appear invalid to the public, and reasonable competitors would be justified in conducting their affairs accordingly. In such a case, where the claim is invalid on its face without the certificate of correction, it strikes us as an illogical result to allow the patent holder, once the certificate of correction has issued, to sue an alleged infringer for activities that occurred before the issuance of the certificate of correction.

*Id.* at 1295-96. The Federal Circuit has since confirmed the public policy rationale of this rule, and explained that it poses little hardship to diligent patentees:

> [T]he *Southwest* court itself was concerned with placing the risk inherent in unanticipated broadening where it belongs: on the patentee that has availed himself of the patent system, not on the public that is entitled to rely upon the public record of the patent. "[I]t does not seem to us to be asking too much to expect a patentee to check a patent when it is issued in order to determine whether it contains any errors that require the issuance of a certificate of correction."

*Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1373 (Fed. Cir. 2001) (quoting *Southwest Software*, 226 F.3d at 1296).

*Southwest Software*'s interpretation of § 251 has been followed in numerous district court cases. *See, e.g.*, *Mobile Hi-Tech Wheels v. CIA Wheel Group*, 514 F. Supp. 2d 1172, 1181 (C.D. Cal. 2007); *SDS USA, Inc. v. Ken Specialties, Inc.*, No. CIV. 99-133, 2002 WL 31055997 at *24 (D.N.J. Aug. 28, 2002); *ISCO Intern., Inc. v. Conductus, Inc.*, C.A. No. 01-487-GMS, 2002 WL 31498989 at *2 (D. Del. Nov. 8, 2002); *Adrain v. Hypertech, Inc.*, No. 2:98-CV-37C, 2001 WL 740542 at *3-*4 (D. Utah Apr. 18, 2001) (interpreting 35 U.S.C. § 255, relating to corrections resulting from an applicant's error, but holding that § 254 and § 255 both use the same "for causes thereafter arising" construction, and that *Southwest* therefore still applies).

Given the rule that certificates of correction are ineffective in lawsuits that predate the correction, dismissal of Count VIII is the only proper course because Apple cannot identify a single validly issued claim among the Printed Claims that it could assert in this litigation. Even

if the PTO were to grant Apple's Request for a Certificate of Correction, that could not cure the

defect in Count VIII of the Complaint, because Count VIII was asserted prior to the correction.

**D.    This Court lacks the authority to correct the patent, at least because the correction is not evident on the face of the patent.**

The '453 patent, as it currently stands, is invalid and should be dismissed from this case.

Although Apple could hypothetically request that this Court correct the defect, this Court lacks

the authority to do so, at least because the defect is not evident on the face of the '453 patent.

District courts have a limited common law authority to correct patents. This authority is

limited because the Federal Circuit "repeatedly and consistently has recognized that courts may

not redraft claims, whether to make them operable or to sustain their validity." *Chef Am., Inc. v.

Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004). Additionally, because this is a

common law authority, not governed by statute, "major errors are subject only to correction by

the PTO." *Novo Industries, L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003).

The primary Federal Circuit case describing a court's limited authority to correct is *Novo

Industries, L.P. v. Micro Molds Corporation. Novo Industries* explained that this limited

authority is part of the District Court's ability to interpret a patent:

> This case presents the question whether a district court can act to correct an error
> in a patent by interpretation of the patent where no certificate of correction has
> been issued. We hold that a district court can do so only if (1) the correction is not
> subject to reasonable debate based on consideration of the claim language and the
> specification and (2) the prosecution history does not suggest a different
> interpretation of the claims.

*Id.* at 1354.

Importantly, this test, on its face, provides that the power of a court to correct through

interpretation is limited to corrections that are evident on the face of the patent. This is why the

first prong of the above-quoted *Novo Industries* test is limited to "consideration of the claim

language and the specification." *Id.* As *Novo Industries* explained: "where the error is not

evident from the face of the patent itself,…it is important that the PTO bring its expertise to bear

and consider whether such a correction is appropriate." *Id.* at 1357. The Federal Circuit has

unambiguously confirmed this limitation on a district court's authority to correct a patent

through interpretation:

> Because a reader of the patent at issue in *Novo Industries* could not ascertain the
> error from the face of the patent, we held that it was beyond the district court's
> authority to guess at what was intended, and that the error, if any, could only be
> corrected by the PTO. [350 F.3d] at 1357-58. We recently followed *Novo
> Industries* in *Hoffer*, holding that an error apparent from the face of the patent
> could have been corrected by the district court. *Hoffer v. Microsoft Corp.*, 405
> F.3d 1326, 1331 (Fed. Cir. 2005).
>
> This rule also comports with our prior case law...
>
> The error here is not evident on the face of the patent. The prosecution history
> discloses that the missing language was required to be added by the examiner as a
> condition for issuance, but one cannot discern what language is missing simply by
> reading the patent. The district court does not have authority to correct the patent
> in such circumstances.

*Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1303 (Fed. Cir. 2005); *see also, e.g.*,

*Sun Microsystems, Inc. v. Network Appliance, Inc.*, 591 F. Supp. 2d 1069, 1096 (N.D. Cal. 2008)

("The District Court may only correct minor errors that are 'evident on the face of the patent.'")

(quoting *Group One*, 407 F.3d at 1303);

Here, there is nothing on the face of the patent evidencing an error in the Printed Claims.

That knowledge comes from examining the PTO's actions as set forth in the prosecution history.

But as the Federal Circuit held in *Novo Industries* and confirmed in *Group One*, such an error is

beyond the authority of a district court to correct.

This is precisely the conclusion that the district court came to in *Linear Technology Corp.*

*v. Micrel, Inc.*, 524 F. Supp. 2d 1147 (N.D. Cal. 2005). In that case, asserted claims were

amended during a reexamination proceeding, but, due to a PTO mistake, those amended claims

were not printed in the Reexamination Certificate. The PTO notified the patentee of the mistake,

and invited it to seek a certificate of correction, which the patentee did not do. Rather, the

patentee asked the district court to use its common law authority to correct the patent. The court

held that the correction was beyond its authority, reasoning: "It is clear from the public record what the content of these claims are, but the way to correct the error is not clear on the face of the patent." *Id.* at 1156 (citing *Group One*).

In sum, the Court lacks the authority to correct through interpretation the defect in the '453 patent, at least because that defect is not evident on the face of the patent.

## V.      CONCLUSION

For the foregoing reasons, HTC respectfully requests that the Court dismiss Count VIII of the Complaint.

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*

June 4, 2010

John W. Shaw (#3362) *[jshaw@ycst.com]*
Karen L. Pascale (#2903) *[kpascale@ycst.com]*
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 571-6600

Robert A. Van Nest
Leo L. Lam
Ashok Ramani
Eugene M. Paige
Ajay S. Krishnan
John Bostic
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA 94111
Telephone: (415) 391-5400

*Attorneys for Defendants High Tech Computer Corp., a/k/a HTC Corp., HTC (B.V.I.) Corp., HTC America, Inc., and Exedea, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 4, 2010, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following counsel of record:

> Richard K. Herrmann [herrmann@morrisjames.com]
> Mary B. Matterer [mmatterer@morrisjames.com]
> Amy Arnott Quinlan [aquinlan@morrisjames.com]
> MORRIS JAMES LLP
> 500 Delaware Avenue, Suite 1500
> Wilmington, DE 19801

I further certify that on June 4, 2010, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel and on the following non-registered participants in the manner indicated:

> ### By E-Mail
>
> Robert G. Krupka [bob.krupka@kirkland.com]
> KIRKLAND & ELLIS LLP
> 333 Hope Street
> Los Angeles, CA 90071
>
> Gregory S. Arovas [greg.arovas@kirkland.com]
> KIRKLAND & ELLIS LLP
> 601 Lexington Avenue
> New York, NY 10022
>
> Bryan S. Hales [bryan.hales@kirkland.com]
> Marcus E. Sernel [marc.sernel@kirkland.com]
> KIRKLAND & ELLIS LLP
> 300 North LaSalle
> Chicago, IL 60654
>
> Kenneth H. Bridges [kbridges@WongCabello.com]
> Michael T. Pieja [mpieja@WongCabello.com]
> Brian C. Kwok [bkwok@WongCabello.com]
> WONG, CABELLO, LUTSCH, RUTHERFORD & BRUCCULERI LLP
> 540 Cowper Street, Suite 100
> Palo Alto, CA  94301

YOUNG CONAWAY STARGATT & TAYLOR LLP

*/s/ Karen L. Pascale*

John W. Shaw (#3362) *[jshaw@ycst.com]*
Karen L. Pascale (#2903) *[kpascale@ycst.com]*
The Brandywine Building
1000 West St., 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone:  (302) 571-6600

*Attorneys for Defendants, High Tech Computer Corp.. a/k/a HTC Corp., HTC (B.V.I.) Corp., HTC America, Inc., and Exedea,Inc.*