IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| APPLE, INC.,<br><br>                              Plaintiff,<br><br>        v.<br><br>HIGH TECH COMPUTER CORP., a/k/a HTC<br>CORP., HTC (B.V.I.) CORP., HTC<br>AMERICA, INC., and EXEDEA, INC.,<br><br>                              Defendants. | C.A. No. 10-167-RK |

**HIGH TECH COMPUTER CORP., A/K/A HTC CORP., HTC (B.V.I.) CORP.,
HTC AMERICA, INC., AND EXEDEA, INC.'S ANSWER AND
COUNTERCLAIMS TO APPLE'S FIRST AMENDED COMPLAINT FOR
PATENT INFRINGEMENT**

Defendants and Counterclaimants High Tech Computer Corp., a/k/a HTC Corp.,

HTC (B.V.I.) Corp., HTC America, Inc., and Exedea, Inc. hereby answer Apple, Inc.'s

First Amended Complaint for Patent Infringement ("the Complaint") as follows:

## THE PARTIES

1.      Defendants lack knowledge or information sufficient to form a belief as to

the truth of the allegations in Paragraph 1 and on that basis deny them.

2.      Defendants admit that HTC Corp. is a corporation organized and existing

under the laws of Taiwan with its principal place of business at 23 Xinghua Road,

Taoyuan 330, Taiwan, Republic of China.  Defendants admit that HTC Corp. has

engaged in the design, manufacture, importation into, and sale in the United States of

mobile communication devices.  Defendants deny the remainder of the allegations in

Paragraph 2.

1

3.     Defendants admit that HTC B.V.I. is a wholly-owned subsidiary of HTC Corp. and is incorporated under the laws of the British Virgin Islands with its principal place of business at 3F, Omar Hodge Building, Wickhams Cay I, P.O. Box 362, Road Town, Tortola, British Virgin Islands. Defendants admit that HTC B.V.I. has engaged in a variety of business transactions on behalf of HTC Corp. and related entities and is a parent company of additional Defendants. Defendants deny the remainder of the allegations in Paragraph 3.

4.     Defendants admit that HTC America is a wholly-owned subsidiary of HTC B.V.I. and is incorporated under the laws of the state of Texas, with its principal place of business at 13920 SE Eastgate Way, Suite 400, Bellevue, Washington 98005. Defendants admit that HTC America has engaged in services related to the importation and sale of HTC products, including marketing, repair and after-sale service. Defendants deny the remainder of the allegations in Paragraph 4.

5.     Defendants admit that Exedea, Inc. is a wholly-owned subsidiary of Defendant HTC B.V.I. and is incorporated under the laws of the state of Texas with its principal place of business at 5950 Corporate Drive, Houston, Texas 77036. Defendants admit that Exedea has been involved in the importation, distribution and sale of HTC products in the United States. Defendants deny the remainder of the allegations in Paragraph 5.

## NATURE OF THE ACTION

6.     Defendants admit that the Complaint purports to recite an action for infringement of the Asserted Patents. To the extent a response is required, Defendants deny the remainder of the allegations in Paragraph 6.

2

## JURISDICTION AND VENUE

7.      Paragraph 7 contains legal conclusions to which no response is required.

8.      Paragraph 8 contains legal conclusions to which no response is required. To the extent a response is required, Defendants admit that some of the Defendants manufacture or assemble products that may have been offered for sale, sold, purchased, and/or used within the state of Delaware but deny the remainder of the allegations in Paragraph 8.

9.      Paragraph 9 contains legal conclusions to which no response is required. To the extent a response is required, Defendants admit that some of the Defendants manufacture and distribute products that may have been offered for sale, sold, purchased, and/or used within the state of Delaware but deny the remainder of the allegations in Paragraph 9.

## THE PATENTS IN SUIT

10.      Defendants admit that some of the Asserted Patents purport to cover generally various software and/or hardware technologies that could be used in mobile communication devices and/or other products.  Defendants otherwise lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 and on that basis deny them.

11.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 and on that basis deny them.

12.      Denied.

13.      Denied.

3

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 7,362,331

14.     Defendants repeat and incorporate their responses set forth in paragraphs 1-13 above.

15.     Defendants admit that what purports to be a copy of U.S. Patent No. 7,362,331 ("the '331 Patent") is attached to the Complaint as Exhibit A.  Defendants admit that the attached copy of the '331 Patent is entitled "Time-Based, Non-Constant Translation of User Interface Objects Between States" and indicates an issue date of April 22, 2008.  Paragraph 15 otherwise contains legal conclusions to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 15 and on that basis deny them.

16.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 and on that basis deny them.

17.     Denied.

18.     Denied.

19.     Denied.

20.     Denied.

21.     Denied.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 7,479,949

22.     Defendants repeat and incorporate their responses set forth in paragraphs 1-21 above.

23.     Defendants admit that what purports to be a copy of U.S. Patent No. 7,479,949 ("the '949 Patent") is attached to the Complaint as Exhibit B.  Defendants

admit that the attached copy of the '949 Patent is entitled "Touch Screen Device, Method, and Graphical User Interface for Determining Commands by Applying Heuristics" and indicates an issue date of January 20, 2009.  Paragraph 23 otherwise contains legal conclusions to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 23 and on that basis deny them.

24.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 and on that basis deny them.

25.     Denied.

26.     Denied.

27.     Denied.

28.     Denied.

29.     Denied.

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 7,469,381

30.     Defendants repeat and incorporate their responses set forth in paragraphs 1-29 above.

31.     Defendants admit that what purports to be a copy of U.S. Patent No. 7,469,381 ("the '381 Patent") is attached to the Complaint as Exhibit C.  Defendants admit that the attached copy of the '381 Patent is entitled "List Scrolling and Document Translation, Scaling, and Rotation on a Touch-Screen Display" and indicates an issue date of December 23, 2008.  Paragraph 31 otherwise contains legal conclusions to which no response is required.  To the extent a response is required, Defendants lack knowledge

5

or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 31 and on that basis deny them.

32.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 and on that basis deny them.

33.     Denied.

34.     Denied.

35.     Denied.

36.     Denied.

37.     Denied.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 5,920,726

38.     Defendants repeat and incorporate their responses set forth in paragraphs 1-37 above.

39.     Defendants admit that what purports to be a copy of U.S. Patent No. 5,920,726 ("the '726 Patent") is attached to the Complaint as Exhibit D.  Defendants admit that the attached copy of the '726 Patent is entitled "System and Method for Managing Power Conditions Within a Digital Camera Device" and indicates an issue date of July 6, 1999.  Paragraph 39 otherwise contains legal conclusions to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 39 and on that basis deny them.

40.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 and on that basis deny them.

41.     Denied.

6

069415.1001

42.     Denied.

43.     Denied.

44.     Denied.

45.     Denied.

## COUNT V – INFRINGEMENT OF U.S. PATENT NO. 7,633,076

46.     Defendants repeat and incorporate their responses set forth in paragraphs 1-45 above.

47.     Defendants admit that what purports to be a copy of U.S. Patent No. 7,633,076 ("the '076 Patent") is attached to the Complaint as Exhibit E.  Defendants admit that the attached copy of the '076 Patent is entitled "Automated Response to and Sensing of User Activity in Portable Devices" and indicates an issue date of December 15, 2009.  Paragraph 47 otherwise contains legal conclusions to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 47 and on that basis deny them.

48.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 48 and on that basis deny them.

49.     Denied.

50.     Denied.

51.     Denied.

52.     Denied.

53.     Denied.

YCST01:9887324.1                                                          069415.1001

## COUNT VI – INFRINGEMENT OF U.S. PATENT NO. 5,848,105

54.     Defendants repeat and incorporate their responses set forth in paragraphs 1-53 above.

55.     Defendants admit that what purports to be a copy of U.S. Patent No. 5,848,105 ("the '105 Patent") is attached to the Complaint as Exhibit F.  Defendants admit that the attached copy of the '105 Patent is entitled "GMSK Signal Processors for Improved Communications Capacity and Quality" and indicates an issue date of December 8, 1998.  Paragraph 55 otherwise contains legal conclusions to which no response is required.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations contained in Paragraph 55 and on that basis deny them.

56.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56 and on that basis deny them.

57.     Denied.

58.     Denied.

59.     Denied.

60.     Denied.

61.     Denied.

## COUNT VII – INFRINGEMENT OF U.S. PATENT NO. 5,455,599

62.     Defendants repeat and incorporate their responses set forth in paragraphs 1-61 above.

63.     Defendants admit that what purports to be a copy of U.S. Patent No. 5,455,599 ("the '599 Patent") is attached to the Complaint as Exhibit G.  Defendants

8

admit that the attached copy of the '599 Patent is entitled "Object-Oriented Graphic

System" and indicates an issue date of October 3, 1995. Paragraph 63 otherwise contains

legal conclusions to which no response is required. To the extent a response is required,

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

remainder of the allegations contained in Paragraph 63 and on that basis deny them.

64.     Defendants lack knowledge or information sufficient to form a belief as to

the truth of the allegations contained in Paragraph 64 and on that basis deny them.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Denied.

69.     Denied.

## COUNT VIII – INFRINGEMENT OF U.S. PATENT NO. 6,424,354

70.     Defendants repeat and incorporate their responses set forth in paragraphs

1-69 above.

71.     Defendants admit that what purports to be a copy of U.S. Patent No.

6,424,354 ("the '354 Patent") is attached to the Complaint as Exhibit H. Defendants

admit that the attached copy of the '354 Patent is entitled "Object-Oriented Event

Notification System With Listener Registration of Both Interests and Methods" and

indicates an issue date of July 23, 2002. Paragraph 71 otherwise contains legal

conclusions to which no response is required. To the extent a response is required,

Defendants lack knowledge or information sufficient to form a belief as to the truth of the

remainder of the allegations contained in Paragraph 71 and on that basis deny them.

72.    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 72 and on that basis deny them.

73.    Denied.

74.    Denied.

75.    Denied.

76.    Denied.

77.    Denied.

## RESPONSE TO PRAYER FOR RELIEF

78.    Defendants deny each allegation of the Complaint not expressly admitted herein and denies that Apple is entitled to any of the relief requested in the First Amended Complaint.

## AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

## (INVALIDITY OF THE ASSERTED PATENTS)

79.    The '331 Patent, '949 Patent, '381 Patent, '726 Patent, '076 Patent, '105 Patent, '599 Patent, and '354 Patent, and each of the claims thereof are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, utility, novelty, non-obviousness, enablement, written description and definiteness in accordance with 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, or are invalid pursuant to the judicial doctrine barring double-patenting.

10

## SECOND AFFIRMATIVE DEFENSE

## (NON-INFRINGEMENT OF THE ASSERTED PATENTS)

80.    Defendants have not infringed, are not infringing, and will not infringe any of the claims of the '331 Patent, '949 Patent, '381 Patent, '726 Patent, '076 Patent, '105 Patent, '599 Patent, or '354 Patent, either directly or indirectly, contributorily or by inducement, literally or under the doctrine of equivalents.

## THIRD AFFIRMATIVE DEFENSE

## (PROSECUTION HISTORY ESTOPPEL)

81.    An additional basis of non-infringement is that statements, representations, admissions, and amendments made to the United States Patent and Trademark Office during the prosecution of the applications which matured into the '331 Patent, '949 Patent, '381 Patent, '726 Patent, '076 Patent, '105 Patent, '599 Patent, and '354 Patent, and/or their parent applications, as well as the prior art, estops Apple from asserting that the claims of said patents are infringed by Defendants' products.

## FOURTH AFFIRMATIVE DEFENSE

## (LACHES)

82.    Apple is estopped from asserting the '331 Patent, '949 Patent, '381 Patent, '726 Patent, '076 Patent, '105 Patent, '599 Patent, and '354 Patent, and each of the claims thereof to the extent Apple unreasonably delayed in filing suit against Defendants.

## FIFTH AFFIRMATIVE DEFENSE

## (MARKING & NOTICE)

83.    Apple's claim for damages for the alleged infringement of the '331 Patent, '949 Patent, '381 Patent, '726 Patent, '076 Patent, '105 Patent, '599 Patent, and '354 Patent is barred, in whole or in part, for failure to allege compliance with, and failure to comply with, the marking and/or notice requirements of 35 U.S.C. § 287.

## SIXTH AFFIRMATIVE DEFENSE

## (LICENSE)

84.    Upon information and belief, Apple has licensing agreements with certain third party suppliers.  Pursuant to the terms of these licensing agreements, these suppliers provide components and/or software that are purchased by Defendants and incorporated into accused products.  Therefore, Defendants are licensed to perform some or all of the acts alleged to infringe the '331 Patent, '949 Patent, '381 Patent, '726 Patent, '076 Patent, '105 Patent, '599 Patent, and '354 Patent.

## SEVENTH AFFIRMATIVE DEFENSE

## (UNENFORCEABILITY OF '726 PATENT DUE TO INEQUITABLE CONDUCT)

85.    The '726 Patent is unenforceable due to inequitable conduct before the United States Patent and Trademark Office ("USPTO") during prosecution of the patent application that led to the '726 Patent.

86.    Eric Anderson ("Anderson") filed a patent application on June 12, 1997 that issued on July 6, 1999 as the '726 Patent asserted by Apple in the instant litigation.

069415.1001

87.     As a named inventor, Anderson had a duty under 37 C.F.R. § 1.56(c) to disclose any information material to the patentability of the purported invention underlying the '726 Patent.

88.     The '726 Patent purports to claim "a system for managing power conditions in a digital camera device," ('726 Patent at 13:50-51) and describes a preferred embodiment wherein a power manager detects a power failure within a digital camera and "removes operating power from all non-critical subsystems and switches the critical subsystems to a backup power supply" in order to maintain the camera's volatile memory in a "low-power mode, with all states preserved intact." '726 Patent at 2:13-23.

89.     On information and belief, Apple's claims for infringement of the '726 Patent are barred in whole or in part by Anderson's failure to comply with the duty of candor before the USPTO.  Anderson misrepresented or omitted material information regarding relevant prior art in prosecuting the '726 Patent.

90.     The materiality of the information that was omitted is demonstrated by the fact that each withheld prior art reference discloses an invention closely related to the technology claimed in the '726 Patent and thus bears directly on the patentability of that technology.

91.     The materiality of the information that was omitted is further confirmed by the fact that, as explained further below, in several instances the withheld reference was cited to Anderson by a patent examiner overseeing the prosecution of a patent application seeking to claim related subject matter, and the reference was cited as a ground for rejecting the claims of that pending application.  That fact demonstrates that a reasonable examiner would have likely considered the withheld information relevant in assessing the patentability of the claims here.

13

92.     On information and belief, Anderson withheld the information with the intent to deceive the USPTO.  Anderson's intent to deceive the USPTO can be inferred from the fact that he repeatedly failed to cite material prior art of which he was made aware during the course of prosecuting related applications.  Illustrative examples of such failures to disclose material prior art are discussed below in paragraphs 97-114.  As a result of at least these omissions, the '726 Patent is unenforceable due to inequitable conduct.

93.     Anderson also has an apparent history of withholding material information from the USPTO.

94.     In 2008, in *Flashpoint Technology, Inc. v. AT&T Mobility, LLC et al.*, defendant Motorola, Inc. filed 602 paragraphs of declaratory judgment counterclaims. C.A. No. 08-00140-GMS (D.I. 186).

95.     These counterclaims list Kirkland & Ellis, Apple's counsel in the present litigation, as "Of Counsel" to Motorola. *Id.*

96.     These counterclaims accused Anderson of inequitable conduct and set forth his failure to disclose at least twenty material prior art references in connection with the prosecution of at least five separate patents.  *Id.*

## U.S. PATENT NO. 5,262,868

97.     During the time that the application leading to the '726 Patent was pending before the USPTO, Anderson was also aware of U.S. Patent No. 5,262,868 to Kaneko ("the Kaneko patent").  Anderson became aware of the Kaneko patent no later than September 26, 1997, when the Examiner reviewing Anderson's 08/666,241 application informed Anderson of the Kaneko patent in an Office Action.

14

98.     The Kaneko patent discloses information that is unquestionably material to issues relating to the patentability of the claims of the '726 Patent, including the issue of obviousness. For example, the Kaneko patent discloses a "digital, electronic, still camera" with a processor coupled to the device for controlling the camera, a power manager that detects a battery voltage, and registers reflected by the setting of flags that indicate states and other information used to control the camera. *See, e.g.*, Kaneko patent at 1:60-5:3, 8:8-58, Figs. 1-3. These teachings provided by Kaneko are all material to the supposed invention claimed by the '726 Patent. *See, e.g.*, '726 Patent at 13:50-62 (claim 1 reciting processor, power manager and status, control, and interrupt information to control the camera).

99.     The Kaneko patent specifically discloses a "memory card built-in battery … as a data backup power for preserving the image data stored in said volatile semiconductor memory." Kaneko patent at 1:64-2:3. The '726 Patent similarly describes a battery and purports to claim a "system for managing power conditions in a digital camera device" wherein a processor responds to a "low power level condition" by performing a power-down sequence and a power-up sequence to protect data stored in the device's volatile memory. '726 Patent at 13:63-67 (claim 2).

100.    The Kaneko patent's materiality is further demonstrated by the fact that it was used to reject the claims of a patent application claiming technology related to the purported invention of the '726 Patent. On June 20, 1996, Anderson filed Application No. 08/666,241, which issued as U.S. Patent No. 6,031,964, "System and Method for Using a Unified Memory Architecture to Implement a Digital Camera Device" ("the '964 Patent"). On September 26, 1997, the Examiner overseeing that application issued an

15

Office Action citing the Kaneko patent as grounds to reject one or more claims of the application that became the '964 Patent. The '964 Patent, like the '726 Patent at issue here, claims a digital camera device with volatile random-access memory for storing unprocessed image data, as well as a "power management system, for monitoring a power supply to detect a power failure, configured to protect said sets of image data if said power failure is detected." '964 Patent at 8:35-49. Because the '726 Patent is closely related to the '964 Patent, it may be inferred that the USPTO would have considered the Kaneko patent material to the patentability of the '726 Patent as it was to the '964 Patent. It may further be inferred from this fact that Anderson knew the Kaneko patent was material to the patentability of the '726 Patent.

101.   Although Anderson became aware of the Kaneko patent before he submitted the second information disclosure statement in the '726 Patent prosecution, neither he nor his prosecuting attorney nor any other individual subject to the requirements of 37 C.F.R. § 1.56(c) disclosed the Kaneko patent to the Examiner during prosecution of the '726 Patent. Intent to deceive when failing to disclose the Kaneko patent while the '726 application was pending is evidenced at least by the applicant's knowledge of the Kaneko patent and the high degree of materiality of the Kaneko patent.

102.   The '726 Patent is unenforceable due to inequitable conduct as a result of the failure to disclose the Kaneko patent with intent to deceive.

## U.S. PATENT NO. 5,247,321

103.   During the time that the application leading to the '726 Patent was pending before the USPTO, Anderson was also aware of U.S. Patent No. 5,247,321 to Kazami ("the Kazami patent"). Anderson became aware of the Kazami patent no later

16

than September 3, 1998, when the Examiner reviewing Anderson's 08/666,241 application informed Anderson of the Kazami patent in an Office Action.

104.    The Kazami patent discloses information that is unquestionably material to issues relating to the patentability of the claims of the '726 Patent, including the issue of obviousness.  For example, the Kazami patent generally discloses a microcomputer-controlled camera with a backup-battery-powered control circuit.  *See, e.g.*, Kazami patent at 2:34-50.  In addition, the Kazami patent specifically discloses the use of interrupts and memory that stores "photographing information" for controlling the camera.  *See, e.g., id.* at 2:50-58, 6:21-30.  These teachings provided by the Kazami patent are all material to the supposed invention claimed by the '726 Patent.  *See, e.g.*, '726 Patent at 13:50-62 (claim 1 reciting processor, power manager and status, control, and interrupt information to control the camera).

105.    The Kazami patent further discloses a low-power condition and corresponding power-down and power-up sequence to preserve captured image data in response to a temporary loss of power.  *See, e.g.*, Kazami patent at 2:50-63, 4:21-29, 5:65-6:39, Figs. 3-4.  The '726 Patent similarly describes a backup batter and purports to claim a "system for managing power conditions in a digital camera device" wherein a processor responds to a "low power level condition" by performing a power-down sequence and a power-up sequence to protect data stored in the device's volatile memory. '726 Patent at 13:63-67 (claim 2).

106.    The Kazami patent's materiality is further demonstrated by the fact that it was cited to Anderson by the Examiner in another patent application claiming technology related to the purported invention of the '726 Patent.  On June 20, 1996, Anderson filed

17

Application No. 08/666,241, which issued as U.S. Patent No. 6,031,964, "System and Method for Using a Unified Memory Architecture to Implement a Digital Camera Device" ("the '964 Patent"). On September 3, 1998, the Examiner overseeing that application issued an Office Action citing the Kazami Patent as pertinent and explaining that the Kazami patent "relate[s] to an apparatus for monitoring the power supply to detect the failure and switching the power source to the back up power supply . . . ." The '964 Patent, like the '726 Patent at issue here, claims a digital camera device with volatile random-access memory for storing unprocessed image data, as well as a "power management system, for monitoring a power supply to detect a power failure, configured to protect said sets of image data if said power failure is detected." '964 Patent at 8:35-49. Because the '726 Patent is closely related to the '964 Patent, it may be inferred that the USPTO would have considered the Kazami patent material to the patentability of the '726 Patent as it was to the '964 Patent. It may further be inferred from this fact that Anderson knew the Kazami patent was material to the patentability of the '726 Patent.

107.    Although Anderson became aware of the Kazami patent before the first Office Action in the '726 Patent prosecution, neither he nor his prosecuting attorney nor any other individual subject to the requirements of 37 C.F.R. § 1.56(c) disclosed the Kazami patent to the Examiner during prosecution of the '726 Patent. Intent to deceive when failing to disclose the Kazami patent while the '726 application was pending is evidenced at least by the applicant's knowledge of the Kazami patent and the high degree of materiality of the Kazami patent.

108.    The '726 Patent is unenforceable due to inequitable conduct as a result of the failure to disclose the Kazami patent with intent to deceive.

## U.S. PATENT NO. 5,541,656

109.    During the time that the application leading to the '726 Patent was pending before the USPTO, Anderson was also aware of U.S. Patent No. 5,541,656 to Kare ("the Kare patent").  Anderson became aware of the Kare patent no later than November 2, 1998, when the Examiner reviewing Anderson's 08/920,140 application informed Anderson of the Kare patent in an Office Action.

110.    The Kare patent discloses information that is unquestionably material to issues relating to the patentability of the claims of the '726 Patent, including the issue of obviousness.  For example, the Kare patent discloses a digital camera with modes that reduce power consumption, including a processor coupled to and for controlling the camera, a power manager that manages the power usage of the camera, and the use of status, control, and abort information / commands to control the camera.  *See, e.g.*, Kare patent at Abstract, 1:56-2:48, 3:17-28, 5:57-6:2, 6:57-64, 10:42-11:88, 12:48-13:4, 14:32-39, 28:50-54, Tables 3-11, Fig. 9A.  These teachings provided by the Kare patent are all material to the supposed invention claimed by the '726 Patent.  *See, e.g.*, '726 Patent at 13:50-62 (claim 1 reciting processor, power manager and status, control, and interrupt information to control the camera).

111.    The Kare patent further discloses managing an "unexpected loss of power … during any operation" by completing that operation when power is restored.  Kare patent at 6:38-40, 7:66-8:3.  The '726 Patent similarly purports to claim a "system for managing power conditions in a digital camera device" wherein a processor responds to a "low power level condition" by performing a power-down sequence and a power-up sequence to protect data stored in the device's volatile memory.  '726 Patent at 13:63-67 (claim 2).

19

112.   The Kare patent's materiality is further demonstrated by the fact that it was used to reject the claims of a patent application claiming technology related to the purported invention of the '726 Patent.  On August 28, 1997, Anderson filed Application No. 08/920,140, which issued as U.S. Patent No. 6,002,436, "Method and System for Auto Wake-Up for Time Lapse Image Capture in an Image Capture Unit" ("the '436 Patent").  On November 2, 1998, the Examiner overseeing that application issued an Office Action citing the Kare patent as grounds to reject one or more claims of the application that became the '436 Patent.  The '436 Patent, similar to the '726 Patent at issue here, claims a digital camera device with the ability to automatically enter a low-power mode and subsequently power back up and resume normal operation, as well as a backup battery that can prevent loss of volatile memory during a power loss.  '436 Patent at 3:8-17, 4:32-47.  Because the '726 Patent is closely related to the '436 Patent, it may be inferred that the USPTO would have considered the Kare patent material to the patentability of the '726 Patent as it was to the '436 Patent.  It may further be inferred from this fact that Anderson knew the Kare patent was material to the patentability of the '726 Patent.

113.   Although Anderson became aware of the Kare patent before he submitted the last application amendment in the '726 Patent prosecution, neither he nor his prosecuting attorney nor any other individual subject to the requirements of 37 C.F.R. § 1.56(c) disclosed the Kare patent to the Examiner during prosecution of the '726 Patent.  Intent to deceive when failing to disclose the Kare patent while the '726 application was pending is evidenced at least by the applicant's knowledge of the Kare patent and the high degree of materiality of the Kare patent.

YCST01:9887324.1                                                                           069415.1001

114.    The '726 Patent is unenforceable due to inequitable conduct as a result of the failure to disclose the Kare patent with intent to deceive.

115.    The '726 Patent is also unenforceable due to the cumulative effect of at least the above-described failures to disclose material prior art.

\* \* \*

## DEFENDANT'S COUNTERCLAIMS FOR AFFIRMATIVE RELIEF

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendants hereby assert counterclaims against Apple as follows:

## PARTIES

1.    Counterclaimant HTC Corp. (hereinafter "HTC") is a corporation organized and existing under the laws of Taiwan with its principal place of business at 23 Xinghua Road, Taoyuan 330, Taiwan, Republic of China.

2.    Counterclaimant HTC B.V.I. is a wholly-owned subsidiary of HTC Corp. and is incorporated under the laws of the British Virgin Islands with its principal place of business at 3F, Omar Hodge Building, Wickhams Cay I, P.O. Box 362, Road Town, Tortola, British Virgin Islands.

3.    Counterclaimant HTC America is a wholly-owned subsidiary of HTC B.V.I. and is incorporated under the laws of the state of Texas, with its principal place of business at 13920 SE Eastgate Way, Suite 400, Bellevue, Washington 98005.

4.    Counterclaimant Exedea, Inc. is a wholly-owned subsidiary of Defendant HTC B.V.I. and is incorporated under the laws of the state of Texas with its principal place of business at 5950 Corporate Drive, Houston, Texas 77036.

5.      On information and belief, Apple is a corporation organized under the laws of the state of California with its principal place of business at 1 Infinite Loop, Cupertino, California 95014.

## JURISDICTION AND VENUE

6.      All of these counterclaims arise under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq.*  Some of the counterclaims arise under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  Jurisdiction over each counterclaim is proper pursuant to one or more of 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

7.      Because these counterclaims are asserted in an action Apple filed in this Judicial District, this Court has personal jurisdiction over Apple and venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c).

## NATURE OF THE ACTION

8.      This is an action for declaratory relief arising under the patent laws of the United States, 35 U.S.C. §§ 100 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  As described below, Counterclaimants seek declaratory judgment that the claims of United States Patent Nos. 7,362,331 ("the '331 Patent"), 7,479,949 ("the '949 Patent"), 7,469,381 ("the '381 Patent"), 5,920,726 ("the '726 Patent"), 7,633,076 ("the '076 Patent"), 5,848,105 ("the '105 Patent"), 5,455,599 ("the '599 Patent"), 6,424,354 ("the '354 Patent") and each of the claims thereof are invalid for failure to satisfy one or more provisions of 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, and are not infringed by Counterclaimants.  HTC also seeks remedies for Apple's infringement of HTC's U.S. Patent Nos. 7,278,032 ("the '032 Patent"), 5,377,354 ("the HTC '354 Patent"), and 6,188,578 ("the '578 Patent") (collectively "the Asserted HTC Patents").

22

9.      Moreover, Counterclaimants seek declaratory judgment that the claims of the '726 Patent are unenforceable due to inequitable conduct before the United States Patent and Trademark Office ("USPTO") during prosecution of the corresponding application.

10.     An actual controversy over the validity, enforceability, and infringement of the patents at issue exists between Counterclaimants and Apple, as evidenced by the fact that Apple filed the instant case against Counterclaimants alleging infringement of these patents.

## COUNT I

### (DECLARATORY JUDGMENT OF INVALIDITY OF THE '331 PATENT)

11.     Counterclaimants repeat and reallege paragraphs 1-10 as if fully set forth herein.

12.     The '331 Patent and each of the claims thereof are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, utility, novelty, non-obviousness, enablement, written description and definiteness in accordance with 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, or are invalid pursuant to the judicial doctrine barring double-patenting.

13.     Counterclaimants are entitled to a declaratory judgment that the '331 Patent is invalid.

YCST01:9887324.1                                                                                              069415.1001

## COUNT II

### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '331 PATENT)

14.     Counterclaimants repeat and reallege paragraphs 1-13 as if fully set forth herein.

15.     Counterclaimants have not infringed, are not infringing, and will not infringe any of the claims of the '331 Patent, either directly or indirectly, contributorily or by inducement, literally or under the doctrine of equivalents.

16.     Counterclaimants are entitled to a declaratory judgment that they have not infringed, and are not infringing, any valid and enforceable claim of the '331 Patent.

## COUNT III

### (DECLARATORY JUDGMENT OF INVALIDITY OF THE '949 PATENT)

17.     Counterclaimants repeat and reallege paragraphs 1-16 as if fully set forth herein.

18.     The '949 Patent and each of the claims thereof are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, utility, novelty, non-obviousness, enablement, written description and definiteness in accordance with 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, or are invalid pursuant to the judicial doctrine barring double-patenting.

19.     Counterclaimants are entitled to a declaratory judgment that the '949 Patent is invalid.

24

## COUNT IV

### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '949 PATENT)

20.     Counterclaimants repeat and reallege paragraphs 1-19 as if fully set forth herein.

21.     Counterclaimants have not infringed, are not infringing, and will not infringe any of the claims of the '949 Patent, either directly or indirectly, contributorily or by inducement, literally or under the doctrine of equivalents.

22.     Counterclaimants are entitled to a declaratory judgment that they have not infringed, and are not infringing, any valid and enforceable claim of the '949 Patent.

## COUNT V

### (DECLARATORY JUDGMENT OF INVALIDITY OF THE '381 PATENT)

23.     Counterclaimants repeat and reallege paragraphs 1-22 as if fully set forth herein.

24.     The '381 Patent and each of the claims thereof are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, utility, novelty, non-obviousness, enablement, written description and definiteness in accordance with 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, or are invalid pursuant to the judicial doctrine barring double-patenting.

25.     Counterclaimants are entitled to a declaratory judgment that the '381 Patent is invalid.

YCST01:9887324.1                                                          069415.1001

## COUNT VI

### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '381 PATENT)

26.     Counterclaimants repeat and reallege paragraphs 1-25 as if fully set forth herein.

27.     Counterclaimants have not infringed, are not infringing, and will not infringe any of the claims of the '381 Patent, either directly or indirectly, contributorily or by inducement, literally or under the doctrine of equivalents.

28.     Counterclaimants are entitled to a declaratory judgment that they have not infringed, and are not infringing, any valid and enforceable claim of the '381 Patent.

## COUNT VII

### (DECLARATORY JUDGMENT OF INVALIDITY OF THE '726 PATENT)

29.     Counterclaimants repeat and reallege paragraphs 1-28 as if fully set forth herein.

30.     The '726 Patent and each of the claims thereof are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, utility, novelty, non-obviousness, enablement, written description and definiteness in accordance with 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, or are invalid pursuant to the judicial doctrine barring double-patenting.

31.     Counterclaimants are entitled to a declaratory judgment that the '726 Patent is invalid.

## COUNT VIII

### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '726 PATENT)

32.     Counterclaimants repeat and reallege paragraphs 1-31 as if fully set forth herein.

33.     Counterclaimants have not infringed, are not infringing, and will not infringe any of the claims of the '726 Patent, either directly or indirectly, contributorily or by inducement, literally or under the doctrine of equivalents.

34.     Counterclaimants are entitled to a declaratory judgment that they have not infringed, and are not infringing, any valid and enforceable claim of the '726 Patent.

## COUNT IX

### (DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '726 PATENT)

35.     Counterclaimants repeat and reallege paragraphs 1-34 as if fully set forth herein.

36.     Eric Anderson ("Anderson") filed a patent application on June 12, 1997 that issued on July 6, 1999 as the '726 Patent asserted by Apple in the instant litigation.

37.     As a named inventor, Anderson had a duty under 37 C.F.R. § 1.56(c) to disclose any information material to the patentability of the purported invention underlying the '726 Patent.

38.     The '726 Patent purports to claim "a system for managing power conditions in a digital camera device," ('726 Patent at 13:50-51) and describes a preferred embodiment wherein a power manager detects a power failure within a digital camera and "removes operating power from all non-critical subsystems and switches the critical

27

subsystems to a backup power supply" in order to maintain the camera's volatile memory in a "low-power mode, with all states preserved intact." '726 Patent at 2:13-23.

39.     On information and belief, Apple's claims for infringement of the '726 Patent are barred in whole or in part by Anderson's failure to comply with the duty of candor before the USPTO. Anderson misrepresented or omitted material information regarding relevant prior art in prosecuting the '726 Patent.

40.     The materiality of the information that was omitted is demonstrated by the fact that each withheld prior art reference discloses an invention closely related to the technology claimed in the '726 Patent and thus bears directly on the patentability of that technology.

41.     The materiality of the information that was omitted is further confirmed by the fact that, as explained further below, in several instances the withheld reference was cited to Anderson by a patent examiner overseeing the prosecution of a patent application seeking to claim related subject matter, and the reference was cited as a ground for rejecting the claims of that pending application. That fact demonstrates that a reasonable examiner would have likely considered the withheld information relevant in assessing the patentability of the claims here.

42.     On information and belief, Anderson withheld the information with the intent to deceive the USPTO. Anderson's intent to deceive the USPTO can be inferred from the fact that he repeatedly failed to cite material prior art of which he was made aware during the course of prosecuting related applications. Illustrative examples of such failures to disclose material prior art are discussed below in paragraphs 47-64. As a

result of at least these omissions, the '726 Patent is unenforceable due to inequitable conduct.

43.    Anderson also has an apparent history of withholding material information from the USPTO.

44.    In 2008, in *Flashpoint Technology, Inc. v. AT&T Mobility, LLC et al.*, defendant Motorola, Inc. filed 602 paragraphs of declaratory judgment counterclaims. C.A. No. 08-00140-GMS (D.I. 186).

45.    These counterclaims list Kirkland & Ellis, Apple's counsel in the present litigation, as "Of Counsel" to Motorola. *Id.*

46.    These counterclaims accused Anderson of inequitable conduct and set forth his failure to disclose at least twenty material prior art references in connection with the prosecution of at least five separate patents. *Id.*

## U.S. PATENT NO. 5,262,868

47.    During the time that the application leading to the '726 Patent was pending before the USPTO, Anderson was also aware of U.S. Patent No. 5,262,868 to Kaneko ("the Kaneko patent"). Anderson became aware of the Kaneko patent no later than September 26, 1997, when the Examiner reviewing Anderson's 08/666,241 application informed Anderson of the Kaneko patent in an Office Action.

48.    The Kaneko patent discloses information that is unquestionably material to issues relating to the patentability of the claims of the '726 Patent, including the issue of obviousness. For example, the Kaneko patent discloses a "digital, electronic, still camera" with a processor coupled to the device for controlling the camera, a power manager that detects a battery voltage, and registers reflected by the setting of flags that

29

indicate states and other information used to control the camera. *See, e.g.*, Kaneko patent at 1:60-5:3, 8:8-58, Figs. 1-3. These teachings provided by Kaneko are all material to the supposed invention claimed by the '726 Patent. *See, e.g.*, '726 Patent at 13:50-62 (claim 1 reciting processor, power manager and status, control, and interrupt information to control the camera).

49.     The Kaneko patent specifically discloses a "memory card built-in battery … as a data backup power for preserving the image data stored in said volatile semiconductor memory." Kaneko patent at 1:64-2:3. The '726 Patent similarly describes a battery and purports to claim a "system for managing power conditions in a digital camera device" wherein a processor responds to a "low power level condition" by performing a power-down sequence and a power-up sequence to protect data stored in the device's volatile memory. '726 Patent at 13:63-67 (claim 2).

50.     The Kaneko patent's materiality is further demonstrated by the fact that it was used to reject the claims of a patent application claiming technology related to the purported invention of the '726 Patent. On June 20, 1996, Anderson filed Application No. 08/666,241, which issued as U.S. Patent No. 6,031,964, "System and Method for Using a Unified Memory Architecture to Implement a Digital Camera Device" ("the '964 Patent"). On September 26, 1997, the Examiner overseeing that application issued an Office Action citing the Kaneko patent as grounds to reject one or more claims of the application that became the '964 Patent. The '964 Patent, like the '726 Patent at issue here, claims a digital camera device with volatile random-access memory for storing unprocessed image data, as well as a "power management system, for monitoring a power supply to detect a power failure, configured to protect said sets of image data if

said power failure is detected." '964 Patent at 8:35-49. Because the '726 Patent is closely related to the '964 Patent, it may be inferred that the USPTO would have considered the Kaneko patent material to the patentability of the '726 Patent as it was to the '964 Patent. It may further be inferred from this fact that Anderson knew the Kaneko patent was material to the patentability of the '726 Patent.

51.    Although Anderson became aware of the Kaneko patent before he submitted the second information disclosure statement in the '726 Patent prosecution, neither he nor his prosecuting attorney nor any other individual subject to the requirements of 37 C.F.R. § 1.56(c) disclosed the Kaneko patent to the Examiner during prosecution of the '726 Patent. Intent to deceive when failing to disclose the Kaneko patent while the '726 application was pending is evidenced at least by the applicant's knowledge of the Kaneko patent and the high degree of materiality of the Kaneko patent.

52.    The '726 Patent is unenforceable due to inequitable conduct as a result of the failure to disclose the Kaneko patent with intent to deceive.

## U.S. PATENT NO. 5,247,321

53.    During the time that the application leading to the '726 Patent was pending before the USPTO, Anderson was also aware of U.S. Patent No. 5,247,321 to Kazami ("the Kazami patent"). Anderson became aware of the Kazami patent no later than September 3, 1998, when the Examiner reviewing Anderson's 08/666,241 application informed Anderson of the Kazami patent in an Office Action.

54.    The Kazami patent discloses information that is unquestionably material to issues relating to the patentability of the claims of the '726 Patent, including the issue of obviousness. For example, the Kazami patent generally discloses a microcomputer-

31

controlled camera with a backup-battery-powered control circuit. *See, e.g.*, Kazami patent at 2:34-50. In addition, the Kazami patent specifically discloses the use of interrupts and memory that stores "photographing information" for controlling the camera. *See, e.g.*, *id.* at 2:50-58, 6:21-30. These teachings provided by the Kazami patent are all material to the supposed invention claimed by the '726 Patent. *See, e.g.*, '726 Patent at 13:50-62 (claim 1 reciting processor, power manager and status, control, and interrupt information to control the camera).

55.     The Kazami patent further discloses a low-power condition and corresponding power-down and power-up sequence to preserve captured image data in response to a temporary loss of power. *See, e.g.*, Kazami patent at 2:50-63, 4:21-29, 5:65-6:39, Figs. 3-4. The '726 Patent similarly describes a backup batter and purports to claim a "system for managing power conditions in a digital camera device" wherein a processor responds to a "low power level condition" by performing a power-down sequence and a power-up sequence to protect data stored in the device's volatile memory. '726 Patent at 13:63-67 (claim 2).

56.     The Kazami patent's materiality is further demonstrated by the fact that it was cited to Anderson by the Examiner in another patent application claiming technology related to the purported invention of the '726 Patent. On June 20, 1996, Anderson filed Application No. 08/666,241, which issued as U.S. Patent No. 6,031,964, "System and Method for Using a Unified Memory Architecture to Implement a Digital Camera Device" ("the '964 Patent"). On September 3, 1998, the Examiner overseeing that application issued an Office Action citing the Kazami Patent as pertinent and explaining that the Kazami patent "relate[s] to an apparatus for monitoring the power supply to

32

detect the failure and switching the power source to the back up power supply . . . ."  The

'964 Patent, like the '726 Patent at issue here, claims a digital camera device with volatile

random-access memory for storing unprocessed image data, as well as a "power

management system, for monitoring a power supply to detect a power failure, configured

to protect said sets of image data if said power failure is detected."  '964 Patent at 8:35-

49.  Because the '726 Patent is closely related to the '964 Patent, it may be inferred that

the USPTO would have considered the Kazami patent material to the patentability of the

'726 Patent as it was to the '964 Patent.  It may further be inferred from this fact that

Anderson knew the Kazami patent was material to the patentability of the '726 Patent.

57.     Although Anderson became aware of the Kazami patent before the first

Office Action in the '726 Patent prosecution, neither he nor his prosecuting attorney nor

any other individual subject to the requirements of 37 C.F.R. § 1.56(c) disclosed the

Kazami patent to the Examiner during prosecution of the '726 Patent.  Intent to deceive

when failing to disclose the Kazami patent while the '726 application was pending is

evidenced at least by the applicant's knowledge of the Kazami patent and the high degree

of materiality of the Kazami patent.

58.     The '726 Patent is unenforceable due to inequitable conduct as a result of

the failure to disclose the Kazami patent with intent to deceive.

### U.S. PATENT NO. 5,541,656

59.     During the time that the application leading to the '726 Patent was

pending before the USPTO, Anderson was also aware of U.S. Patent No. 5,541,656 to

Kare ("the Kare patent").  Anderson became aware of the Kare patent no later than

November 2, 1998, when the Examiner reviewing Anderson's 08/920,140 application informed Anderson of the Kare patent in an Office Action.

60.     The Kare patent discloses information that is unquestionably material to issues relating to the patentability of the claims of the '726 Patent, including the issue of obviousness.  For example, the Kare patent discloses a digital camera with modes that reduce power consumption, including a processor coupled to and for controlling the camera, a power manager that manages the power usage of the camera, and the use of status, control, and abort information / commands to control the camera.  *See, e.g.*, Kare patent at Abstract, 1:56-2:48, 3:17-28, 5:57-6:2, 6:57-64, 10:42-11:88, 12:48-13:4, 14:32-39, 28:50-54, Tables 3-11, Fig. 9A.  These teachings provided by the Kare patent are all material to the supposed invention claimed by the '726 Patent.  *See, e.g.*, '726 Patent at 13:50-62 (claim 1 reciting processor, power manager and status, control, and interrupt information to control the camera).

61.     The Kare patent further discloses managing an "unexpected loss of power … during any operation" by completing that operation when power is restored.  Kare patent at 6:38-40, 7:66-8:3.  The '726 Patent similarly purports to claim a "system for managing power conditions in a digital camera device" wherein a processor responds to a "low power level condition" by performing a power-down sequence and a power-up sequence to protect data stored in the device's volatile memory.  '726 Patent at 13:63-67 (claim 2).

62.     The Kare patent's materiality is further demonstrated by the fact that it was used to reject the claims of a patent application claiming technology related to the purported invention of the '726 Patent.  On August 28, 1997, Anderson filed Application

34

No. 08/920,140, which issued as U.S. Patent No. 6,002,436, "Method and System for Auto Wake-Up for Time Lapse Image Capture in an Image Capture Unit" ("the '436 Patent"). On November 2, 1998, the Examiner overseeing that application issued an Office Action citing the Kare patent as grounds to reject one or more claims of the application that became the '436 Patent. The '436 Patent, similar to the '726 Patent at issue here, claims a digital camera device with the ability to automatically enter a low-power mode and subsequently power back up and resume normal operation, as well as a backup battery that can prevent loss of volatile memory during a power loss. '436 Patent at 3:8-17, 4:32-47. Because the '726 Patent is closely related to the '436 Patent, it may be inferred that the USPTO would have considered the Kare patent material to the patentability of the '726 Patent as it was to the '436 Patent. It may further be inferred from this fact that Anderson knew the Kare patent was material to the patentability of the '726 Patent.

63.     Although Anderson became aware of the Kare patent before he submitted the last application amendment in the '726 Patent prosecution, neither he nor his prosecuting attorney nor any other individual subject to the requirements of 37 C.F.R. § 1.56(c) disclosed the Kare patent to the Examiner during prosecution of the '726 Patent. Intent to deceive when failing to disclose the Kare patent while the '726 application was pending is evidenced at least by the applicant's knowledge of the Kare patent and the high degree of materiality of the Kare patent.

64.     The '726 Patent is unenforceable due to inequitable conduct as a result of the failure to disclose the Kare patent with intent to deceive.

65.     The '726 Patent is also unenforceable due to the cumulative effect of at least the above-described failures to disclose material prior art.

## COUNT X

### (DECLARATORY JUDGMENT OF INVALIDITY OF THE '076 PATENT)

66.     Counterclaimants repeat and reallege paragraphs 1-65 as if fully set forth herein.

67.     The '076 Patent and each of the claims thereof are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, utility, novelty, non-obviousness, enablement, written description and definiteness in accordance with 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, or are invalid pursuant to the judicial doctrine barring double-patenting.

68.     Counterclaimants are entitled to a declaratory judgment that the '076 Patent is invalid.

## COUNT XI

### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '076 PATENT)

69.     Counterclaimants repeat and reallege paragraphs 1-68 as if fully set forth herein.

70.     Counterclaimants have not infringed, are not infringing, and will not infringe any of the claims of the '076 Patent, either directly or indirectly, contributorily or by inducement, literally or under the doctrine of equivalents.

71.     Counterclaimants are entitled to a declaratory judgment that they have not infringed, and are not infringing, any valid and enforceable claim of the '076 Patent.

## COUNT XII

### (DECLARATORY JUDGMENT OF INVALIDITY OF THE '105 PATENT)

72.     Counterclaimants repeat and reallege paragraphs 1-71 as if fully set forth herein.

73.     The '105 Patent and each of the claims thereof are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, utility, novelty, non-obviousness, enablement, written description and definiteness in accordance with 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, or are invalid pursuant to the judicial doctrine barring double-patenting.

74.     Counterclaimants are entitled to a declaratory judgment that the '105 Patent is invalid.

## COUNT XIII

### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '105 PATENT)

75.     Counterclaimants repeat and reallege paragraphs 1-74 as if fully set forth herein.

76.     Counterclaimants have not infringed, are not infringing, and will not infringe any of the claims of the '105 Patent, either directly or indirectly, contributorily or by inducement, literally or under the doctrine of equivalents.

77.     Counterclaimants are entitled to a declaratory judgment that they have not infringed, and are not infringing, any valid and enforceable claim of the '105 Patent.

## COUNT XIV

### (DECLARATORY JUDGMENT OF INVALIDITY OF THE '599 PATENT)

78.   Counterclaimants repeat and reallege paragraphs 1-77 as if fully set forth herein.

79.   The '599 Patent and each of the claims thereof are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, utility, novelty, non-obviousness, enablement, written description and definiteness in accordance with 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, or are invalid pursuant to the judicial doctrine barring double-patenting.

80.   Counterclaimants are entitled to a declaratory judgment that the '599 Patent is invalid.

## COUNT XV

### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '599 PATENT)

81.   Counterclaimants repeat and reallege paragraphs 1-80 as if fully set forth herein.

82.   Counterclaimants have not infringed, are not infringing, and will not infringe any of the claims of the '599 Patent, either directly or indirectly, contributorily or by inducement, literally or under the doctrine of equivalents.

83.   Counterclaimants are entitled to a declaratory judgment that they have not infringed, and are not infringing, any valid and enforceable claim of the '599 Patent.

YCST01:9887324.1                                                                 069415.1001

## COUNT XVI

### (DECLARATORY JUDGMENT OF INVALIDITY OF THE '354 PATENT)

84.     Counterclaimants repeat and reallege paragraphs 1-83 as if fully set forth herein.

85.     The '354 Patent and each of the claims thereof are invalid for failure to comply with one or more of the conditions for patentability set forth in Title 35 of the United States Code, including, but not limited to, utility, novelty, non-obviousness, enablement, written description and definiteness in accordance with 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, or are invalid pursuant to the judicial doctrine barring double-patenting.

86.     Counterclaimants are entitled to a declaratory judgment that the '354 Patent is invalid.

## COUNT XVII

### (DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '354 PATENT)

87.     Counterclaimants repeat and reallege paragraphs 1-86 as if fully set forth herein.

88.     Counterclaimants have not infringed, are not infringing, and will not infringe any of the claims of the '354 Patent, either directly or indirectly, contributorily or by inducement, literally or under the doctrine of equivalents.

89.     Counterclaimants are entitled to a declaratory judgment that they have not infringed, and are not infringing, any valid and enforceable claim of the '354 Patent.

YCST01:9887324.1                                                                    069415.1001

## COUNTERCLAIMS FOR PATENT INFRINGEMENT

90.     HTC seeks remedies for Apple's infringement of HTC's U.S. Patent Nos. 7,278,032 ("the '032 Patent"), 5,377,354 ("the HTC '354 Patent"), and 6,188,578 ("the '578 Patent") (collectively "the Asserted HTC Patents").

91.     On information and belief, Apple has infringed and continues to infringe one or more claims of the Asserted HTC Patents by engaging in acts that constitute infringement under 35 U.S.C. § 271, including but not limited to making, using, selling, and/or offering for sale in the United States, and/or importing into the United States consumer products including personal computers (such as the MacBook, MacBook Pro, iMac, Mac Mini) and mobile communications devices (such as the iPhone, iPhone 3G, iPhone 3GS) (collectively "the Accused Apple Products").

## COUNT XVIII

### (INFRINGEMENT OF THE '032 PATENT)

92.     Counterclaimants repeat and reallege paragraphs 1-91 as if fully set forth herein.

93.     The '032 Patent, entitled "Circuit and Operating Method for Integrated Interface of PDA and Wireless Communication System," was duly and legally issued on October 2, 2007 by the United States Patent and Trademark Office.  A copy of the '032 Patent is attached hereto as Exhibit A.

94.     HTC is the exclusive and current owner of all rights, title, and interest in the '032 Patent, including the right to bring this suit for injunctive relief and damages.

95.     Apple has infringed and is infringing directly the '032 Patent by making, using, selling, offering for sale, and/or importing without authority products and services

covered by one or more claims of the '032 Patent, including but not limited to the Accused Apple Products.

96.     Apple has contributed to and/or induced, and will continue to contribute to and/or induce, the direct infringement of the '032 Patent by others in the United States by making, using, selling, offering for sale, and/or importing without authority products and services covered by one or more claims of the '032 Patent, including but not limited to the Accused Apple Products.

97.     HTC has been and continues to be damaged by Apple's infringement of the '032 Patent in an amount to be determined at trial.

98.     HTC has suffered irreparable injury for which there is no adequate remedy at law and will continue to suffer such irreparable injury unless Apple's infringement of the '032 Patent is enjoined by this Court.

99.     Apple's infringement of the '032 Patent is exceptional and entitles HTC to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT XIX

### (INFRINGEMENT OF THE HTC '354 PATENT)

100.    Counterclaimants repeat and reallege paragraphs 1-99 as if fully set forth herein.

101.    The HTC '354 Patent, entitled "Method and System for Sorting and Prioritizing Electronic Mail Messages," was duly and legally issued on December 27, 1994 by the United States Patent and Trademark Office.  A copy of the HTC '354 Patent is attached hereto as Exhibit B.

102.    HTC is the exclusive and current owner of all rights, title, and interest in the HTC '354 Patent, including the right to bring this suit for injunctive relief and damages.

103.    Apple has infringed and is infringing directly the HTC '354 Patent by making, using, selling, offering for sale, and/or importing without authority products and services covered by one or more claims of the HTC '354 Patent, including but not limited to certain of the Accused Apple Products.

104.    Apple has contributed to and/or induced, and will continue to contribute to and/or induce, the direct infringement of the HTC '354 Patent by others in the United States by making, using, selling, offering for sale, and/or importing without authority products and services covered by one or more claims of the HTC '354 Patent, including but not limited to the Accused Products.

105.    HTC has been and continues to be damaged by Apple's infringement of the HTC '354 Patent in an amount to be determined at trial.

106.    HTC has suffered irreparable injury for which there is no adequate remedy at law and will continue to suffer such irreparable injury unless Apple's infringement of the HTC '354 Patent is enjoined by this Court.

107.    Apple's infringement of the HTC '354 Patent is exceptional and entitles HTC to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT XX

### (INFRINGEMENT OF THE '578 PATENT)

108.    Counterclaimants repeat and reallege paragraphs 1-107 as if fully set forth herein.

109.   The '578 Patent, entitled "Integrated Circuit Package with Multiple Heat Dissipation Paths," was duly and legally issued on February 13, 2001 by the United States Patent and Trademark Office.  A copy of the '578 Patent is attached hereto as Exhibit C.

110.   HTC is the exclusive and current owner of all rights, title, and interest in the '578 Patent, including the right to bring this suit for injunctive relief and damages.

111.   Apple has infringed and is infringing directly the '578 Patent by making, using, selling, offering for sale, and/or importing without authority products and services covered by one or more claims of the '578 Patent, including but not limited to the Accused Apple Products.

112.   Apple has contributed to and/or induced, and will continue to contribute to and/or induce, the direct infringement of the '578 Patent by others in the United States by making, using, selling, offering for sale, and/or importing without authority products and services covered by one or more claims of the '578 Patent, including but not limited to the Accused Products.

113.   HTC has been and continues to be damaged by Apple's infringement of the '578 Patent in an amount to be determined at trial.

114.   HTC has suffered irreparable injury for which there is no adequate remedy at law and will continue to suffer such irreparable injury unless Apple's infringement of the '578 Patent is enjoined by this Court.

115.   Apple's infringement of the '578 Patent is exceptional and entitles HTC to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendants and Counterclaimants demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Defendants and Counterclaimants pray:

1.      That Apple take nothing by way of its Complaint and the same be dismissed with prejudice;

2.      That judgment be entered that the '331 Patent, '949 Patent, '381 Patent, '726 Patent, '076 Patent, '105 Patent, '599 Patent, and '354 Patent, and each of the claims thereof are invalid;

3.      That judgment be entered that Defendants and Counterclaimants do not, and have not, infringed any claim of the '331 Patent, '949 Patent, '381 Patent, '726 Patent, '076 Patent, '105 Patent, '599 Patent, or '354 Patent;

4.      That judgment be entered that the '726 Patent is unenforceable due to inequitable conduct;

5.      That all damages, injunctive relief, costs, expenses, attorneys fees, or other relief sought by Apple be denied;

6.      That Apple has infringed each and every one of the Asserted HTC Patents;

7.      That Apple and Apple's officers, agents, employees, and those persons in active concert or participation with any of them, and their successors and assigns, be permanently enjoined from infringement, contributory infringement, and inducement of infringement of each and every one of the Asserted HTC Patents, including but not limited to an injunction against making, using, selling, and/or offering for sale within the

YCST01:9887324.1                                                                                          069415.1001

United States, and/or importing into the United States, any products or services that infringe any of the Asserted HTC Patents;

8.      That HTC be awarded all damages adequate to compensate it for Apple's infringement of the Asserted HTC Patents, such damages to be determined by a jury, and if necessary to compensate HTC adequately for Apple's infringement, an accounting;

9.      That HTC be awarded treble damages and pre-judgment and post-judgment interest at the maximum rate allowed by law;

10.     That this case be declared exceptional pursuant to 35 U.S.C. § 285 and attorneys fees be awarded to Defendants and Counterclaimants;

11.     That costs and expenses be awarded to Defendants and Counterclaimants;

12.     That the Court grant Defendants and Counterclaimants all other such relief as the Court may deem just and appropriate.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ John W. Shaw*
John W. Shaw (#3362) [jshaw@ycst.com]
Karen L. Pascale (#2903) [kpascale@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

45

Robert A. Van Nest
Leo L. Lam
Ashok Ramani
Eugene M. Paige
Ajay S. Krishnan
John C. Bostic
**KEKER & VAN NEST LLP**
710 Sansome Street
San Francisco, CA  94111-1704
(415) 391-5400

*Attorneys for Defendants*
*HIGH TECH COMPUTER CORP., a/k/a HTC*
*CORP., HTC (B.V.I.) CORP., HTC AMERICA,*
*INC., and EXEDEA, INC.*

Dated:  July 6, 2010

YCST01:9887324.1                                                                069415.1001

## CERTIFICATE OF SERVICE

I, John W. Shaw, Esquire, hereby certify that on July 6, 2010, I caused to be electronically filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification of such filing to the following counsel of record:

> Richard K. Herrmann [rherrmann@morrisjames.com]
> Mary B. Matterer [mmatterer@morrisjames.com]
> MORRIS JAMES LLP
> 500 Delaware Avenue, Suite 1500
> Wilmington, Delaware 19801

I further certify that on July 6, 2010, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel and on the following non-registered participants in the manner indicated:

> ### *By E-Mail*
>
> Robert G. Krupka [bob.krupka@kirkland.com]
> KIRKLAND & ELLIS LLP
> 333 Hope Street
> Los Angeles, CA 90071
>
> Gregory S. Arovas [greg.arovas@kirkland.com]
> KIRKLAND & ELLIS LLP
> 601 Lexington Avenue
> New York, NY 10022
>
> Bryan S. Hales [bryan.hales@kirkland.com]
> Marcus E. Sernel [marc.sernel@kirkland.com]
> James A. Shimota [jshimota@kirkland.com]
> KIRKLAND & ELLIS LLP
> 300 North LaSalle
> Chicago, IL 60654
>
> Kenneth H. Bridges [kbridges@WongCabello.com]
> Michael T. Pieja [mpieja@WongCabello.com]
> Brian C. Kwok [bkwok@WongCabello.com]
> WONG, CABELLO, LUTSCH, RUTHERFORD & BRUCCULERI LLP
> 540 Cowper Street, Suite 100
> Palo Alto, CA  94301

Young Conaway Stargatt & Taylor LLP

*/s/ John W. Shaw*

John W. Shaw (#3362) [jshaw@ycst.com]
Karen L. Pascale (#2903) [kpascale@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600

*Attorneys for Defendants High Tech Computer Corp., a/k/a HTC Corp.; HTC (B.V.I.) Corp.; HTC America, Inc.; and Exedea, Inc.*