**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| APPLE INC., ) | |
| *Plaintiff,* ) | |
| ) | C.A. No. 10-167 (GMS) |
| vs. ) | C.A. No. 10-544 (GMS) |
| HIGH TECH COMPUTER CORP., *aka* HTC ) | |
| CORP., HTC (B.V.I.) CORP., HTC AMERICA, ) | |
| INC., and EXEDEA, INC., ) | |
| ) | |
| *Defendants.* ) | |

## APPLE'S OPPOSITION TO HTC'S MOTION TO STAY

Richard K. Herrmann (# 405)
Mary B. Matterer (# 2696)
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
rherrmann@morrisjames.com

*Attorneys for Apple Inc.*

August 19, 2011

# TABLE OF CONTENTS

Page

NATURE AND STAGE OF PROCEEDINGS ...........................................................................1

SUMMARY OF ARGUMENT ...................................................................................................3

STATEMENT OF FACTS ...........................................................................................................4

ARGUMENT ...............................................................................................................................5

I.      HTC Is Only Entitled To A Stay Of Claims Related To Patents Actually Asserted
        In The ITC.........................................................................................................................5

II.     No Basis Exists For A Discretionary Stay On The Non-ITC Patents.................................6

        A.      A Stay Will Not Simplify The Issues Or Trial In This Case ...................................6

                1.      Given the lack of substantive overlap between the non-ITC and
                        ITC patents, considerations of efficiency and economy do not
                        warrant the all-encompassing stay HTC seeks ............................................8

                2.      Given the lack of overlap among potential witnesses,
                        considerations of efficiency and economy do not warrant the all-
                        encompassing stay HTC seeks..................................................................10

                3.      The stay HTC seeks will minimize, rather than create, efficiency ...........10

                4.      Considerations of efficiency and economy do not justify the stay
                        HTC seeks because ITC determinations are not binding on this
                        Court ........................................................................................................11

        B.      The Stay HTC Seeks Will Undo Scheduling in the 167 and 544 Cases,
                Which Have Already Been Pending For More Than A Year ...............................11

        C.      A Stay Will Unduly Prejudice Apple....................................................................12

        D.      The Cases HTC Relies On Are Inapposite To The Situation Here.......................13

        E.      Apple's Opposition to HTC's Transfer Motion Does Not Support HTC's
                Motion To Stay ...................................................................................................16

CONCLUSION...........................................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alloc, Inc. v. Unilin Décor N.V.,*
   No. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003) .............................................. 15

*Boston Scientific Corp. v. Cordis Corp.,*
   No. 10-315-SLR, -- F. Supp.2d --, 2011 WL 1398484 (D. Del. Apr. 13, 2011) ................. 6, 12

*Clinton v. Jones,*
   520 U.S. 681 (1997) ........................................................................................................... 6, 13

*Cooper Notification, Inc. v. Twitter, Inc.,*
   No. 09-865-LPS, 2010 WL 5149351 (D. Del. Dec. 13, 2010) ..................................... 11, 12, 13

*FormFactor, Inc. v. Micronics Japan Co.,*
   No. CV-06-07159 JSW, 2008 WL 361128 (N.D. Cal. Feb. 11, 2008) .............................. 14, 15

*Humanscale Corp. v. Compx Int'l Inc.,*
   No. 3:09CV86, 2009 WL 1444312 (E.D. Va. May 21, 2009) ........................................... 7, 8, 9

*Kahn v. Gen. Motors Corp.,*
   889 F.2d 1078 (Fed. Cir. 1989) ...................................................................................... 6, 10, 12

*Landis v. N. Am. Co.,*
   299 U.S. 248 (1936) ................................................................................................................... 6

*LG Elec., Inc. v. Eastman Kodak Co.,*
   No. 09-CV-0344 H(BLM), 2009 WL 1468703 (S.D. Cal. May 26, 2009) ........................ passim

*Pegasus Devel. Corp. v. DirecTv, Inc., Inc.*
   No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003) ..................................... 15, 16

*Sandisk Corp. v. Phison Elec. Corp.,*
   538 F. Supp. 2d 1060 (W.D. Wis. 2008) ........................................................................ 7, 14, 15

*Texas Instruments Inc. v. Cypress Semiconductor Corp.,*
   90 F.3d 1558 (Fed. Cir. 1996) ................................................................................................. 11

## STATUTES

28 U.S.C. § 1659 ............................................................................................................... 1, 2, 5, 6

## NATURE AND STAGE OF PROCEEDINGS

Apple's quest to protect its intellectual property, and prevent HTC from infringing its patents, has been ongoing for quite some time. Currently, HTC stands accused of infringing a myriad of Apple patents in a number of suits before this Court. To stop HTC's widespread infringement of its patents, Apple first filed suit in this Court on March 2, 2010, asserting ten patents. (Case No. 1:10-00167-GMS ("the 167 case").) On the same day, Apple filed an action against HTC in the International Trade Commission ("ITC") on another ten patents, as well as a parallel case in this district (Case No. 1:10-00166-GMS ("the 166 case"), which was stayed pending resolution of the ITC action.[1] These actions having apparently been insufficient to deter HTC from infringing Apple's patents, Apple has since found it necessary to file several additional actions to stop HTC from infringing patents directed to different technologies. Most recently, on July 8, 2011, Apple filed an action in the ITC alleging that HTC infringed five Apple patents. (Inv. No. 337-TA-797 ("the 797 Investigation").) On the same day, Apple filed an action in this Court — Case No. 1:11-00611-GMS ("the 611 case") — on four of those five patents. The remaining patent — U.S. Patent No. 7,469,381 ("the '381 patent") — was already pending in this Court in the original 167 case.

The parties agree that under 28 U.S.C. § 1659, HTC is entitled to a stay of the 611 case, as well as a stay of claims related to the '381 patent, pending the outcome of this most-recent ITC action.

But by its present motion, HTC seeks a stay far broader than anything contemplated by 28 U.S.C. § 1659: it seeks to block Apple from seeking injunctive relief, for years to come, **on**

---

[1] On July 15, 2011 the ITC issued its Initial Determination that HTC is infringing U.S. Patent Nos. 6,343,263 and 5,946,647. *In re Certain Personal Data and Mobile Communications Devices and Related Software*, Inv. No. 337-TA-710, Initial Determination (July 15, 2011). HTC is seeking Commission review of that determination.

*all patents*.  HTC asks this Court to stay claims on the other seven non-ITC patents now pending in the 167 case and on four non-ITC Apple patents pending in another action, Case No. 1:10-00544-GMS ("the 544 case").  These are different patents, related to different technologies, than those before the ITC.  None of these patents are asserted against HTC in the ITC or elsewhere.  Simply put, the all-encompassing stay HTC seeks will only delay resolution of cases currently before this Court that are distinct and different from those before the ITC.

Although in rare circumstances courts have issued discretionary stays pending the outcome of ITC proceedings on other patents, those circumstances are generally confined to situations where the patents at issue shared common specifications or arose from the same patent families.  No such circumstances exist here.  Indeed, courts addressing this issue have emphasized that mere overlap in subject matter alone will not overcome the presumption in favor of expeditious resolution of litigation.  Here, although the ITC patents and the Apple patents at issue in the 167 and 544 cases generally relate to smartphones, these patents cover a range of diverse technologies.  None of the ITC patents share a specification or prosecution history with a non-ITC patent at issue here.  And any overlap in witnesses will be minimal.

In sum, HTC's attempt to halt all litigation regarding the eleven non-ITC Apple patents asserted in the 167 and 544 cases should be denied.  None of these patents is sufficiently similar to the patents asserted in Apple's July 8, 2011 ITC complaint, such that considerations of economy warrant a stay.  Quite the opposite — economy dictates that the 167 and 544 cases should be litigated now.  Because the stay HTC seeks will not create efficiency, but will prevent Apple from seeking relief from a direct competitor's infringement for years to come, it should be denied.

2

## SUMMARY OF ARGUMENT

1.      Under 28 U.S.C. § 1659, HTC is entitled to a stay of only those claims asserted in Apple's July 8, 2011 ITC complaint.  Thus, the parties agree that HTC is entitled to a stay of the 611 case and to claims related to the '381 patent in the 167 case.

2.      By its present motion, however, HTC attempts to stay litigation regarding all remaining patents asserted in the 167 and 544 cases, including eleven Apple patents that have not been asserted against HTC in the ITC.  The strategy behind HTC's motion is clear:  to prevent Apple from pursuing relief related to HTC's infringement of these patents for years to come.  To justify the relief it seeks, HTC must show that a stay will sufficiently simplify the issues or trial in this case, and will not cause undue prejudice to Apple or a tactical advantage to HTC. Because HTC cannot meet this burden, its motion should be denied.

3.      The stay HTC seeks will not simplify the issues or trial in this case.  Because the non-ITC Apple patents pending in the 167 and 544 cases are different than those asserted in the ITC, different claim-construction, infringement and validity analyses will be required of this Court with respect to the non-ITC patents.  Even if there were overlap, none of the ITC's determinations will be binding on this Court.  Considerations of economy and efficiency thus do not warrant the stay HTC seeks.  Rather, these considerations warrant litigating the claims related to the non-ITC patents now.

4.      The stay HTC seeks should further be denied because it will unduly prejudice Apple while at the same time providing HTC with a tactical advantage.  Indeed, the stay HTC seeks would not expire until the resolution of all appeals in the 797 Investigation.  This will likely take years, prohibiting Apple from seeking injunctive relief against HTC's accused infringement of eleven patents for years to come.  When the lengthy does expire, Apple will be forced to confront issues of stale evidence, faded memories, and lost documents.

## STATEMENT OF FACTS

Apple and HTC are direct competitors in the smartphone market, and parties to a number of lawsuits currently pending in the District of Delaware.  On March 2, 2010 — over seventeen months ago — Apple filed the 167 case in this Court.[2]  Three months later, on June 21, 2010, Apple filed its First Amended Complaint against HTC in the 167 case, accusing HTC of infringing eight Apple patents.  Apple also filed the 544 case on the same day, accusing HTC of infringing four additional Apple patents.  HTC filed an answer and counterclaims in the 167 case on August 18, 2010, asserting three patents against Apple.[3]  Fact discovery is underway in both cases.

On July 8, 2011, Apple filed the 611 case, asserting four patents against HTC.  Apple filed a corresponding complaint in the ITC on the same day, asserting infringement by HTC of the same patents at issue in the 611 case and the '381 patent, which Apple asserted in the '167 case.  The ITC instituted the 797 Investigation in response to Apple's July 8, 2011 complaint.  Apple has agreed to stay all litigation in the District of Delaware regarding the patents asserted in the 797 Investigation.

At issue in the 167 and 544 cases are eleven Apple patents and three HTC patents that are not asserted in the ITC nor any other forum.  The eleven Apple non-ITC patents at issue in the 167 and 544 cases relate to a range of technologies, such as object-oriented programming, touch screens, software architecture, user interfaces and power management.  These eleven Apple

---

[2]   On the same day, Apple filed the 166 case, accusing HTC of infringing ten Apple patents. Also, on March 2, 2010 Apple filed a corresponding complaint at the ITC, asserting infringement by HTC of the same patents at issue in the 166 case.  The ITC opened the 710 Investigation in response, and all litigation regarding the patents asserted in the 166 case has been stayed.

[3]   U.S. Patent Nos. 7,278,032, 5,377,354 and 6,188,578.

patents are U.S. Patent Nos. 5,455,599 ("the '599 patent"), 5,848,105 ("the '105 patent"),

5,920,726 ("the '726 patent"), 6,282,646 ("the '646 patent"), 6,424,354 ("the '354 patent"),

7,362,331 ("the '331 patent"), 7,380,116 ("the '116 patent"), 7,383,453 ("the '453 patent"),

7,479,949 ("the '949 patent"), 7,633,076 ("the '076 patent") and 7,657,849 ("the '849 patent")

(collectively "the non-ITC patents").

HTC seeks to stay all patent infringement litigation regarding the non-ITC patents

pending the final determination, and resolution of all appeals in the 797 Investigation.  The

patents at issue in that ITC investigation are U.S. Patent Nos. 7,469,381 ("the '381 patent"),

6,956,564 ("the '564 patent"), 7,084,859 ("the '859 patent"), 7,844,915 ("the '915 patent") and

7,920,129 ("the '129 patent") (collectively "the ITC patents").  A comparison of Apple's non-ITC

patents with the ITC patents reveals their differences:

- Not one of Apple's eleven non-ITC patents shares a specification with an ITC patent.

- Not one of Apple's eleven non-ITC patents shares a prosecution history with an ITC patent.

- With the exception of the '949 patent, which shares a provisional application with the ITC '381 patent, not one of Apple's non-ITC patents is in the same patent family as an ITC patent.

- Eight of Apple's eleven non-ITC patents do not share a single inventor with an ITC patent.

- Of the three non-ITC patents that do share an inventor with an ITC patent, only two of the twenty-five inventors listed on those patents are also listed as an inventor on an ITC patent.

## ARGUMENT

### I.     HTC Is Only Entitled To A Stay Of Claims Related To Patents Actually Asserted In The ITC

Only five patents at issue in this motion — the four patents pending in the 611 case and

the '381 patent pending in the 167 case — are presently the subject of an ITC action.  Under 28

U.S.C. § 1659, HTC is entitled to a mandatory stay on these claims and these claims alone. Thus, the parties agree that the Court should enter an order staying the 611 case and claims regarding the '381 patent in the 167 case.

## II.     No Basis Exists For A Discretionary Stay On The Non-ITC Patents

The presumption inherent in 28 U.S.C. § 1659 is that stays pending the outcome of ITC proceedings should be limited to those claims actually at issue in the ITC. This presumption is consistent with the "strong public policy favoring expeditious resolution of litigation." *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). The Supreme Court has further emphasized that stays of litigation are disfavored absent compelling circumstances. *Landis v. N. Am. Co.,* 299 U.S. 248, 255 (1936) (emphasizing that the movant must "make out a clear case of hardship or inequity if there is even a fair possibility the stay for which he prays will work damage on someone else.").

Whether to grant a stay is within the sole discretion of the court. *Boston Scientific Corp. v. Cordis Corp.*, No. 10-315-SLR, -- F. Supp.2d --, 2011 WL 1398484, at *4 (D. Del. Apr. 13, 2011). When considering motions to stay, courts in this district are typically guided by the following factors: (1) whether a stay will simplify the issues and trial of the case, (2) whether discovery is complete and a trial date has been set, and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. *Id.* The party moving for a stay — here, HTC — bears the burden of proving that a stay is warranted. *Clinton v. Jones,* 520 U.S. 681, 708 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). As demonstrated below, because HTC cannot meet this burden, its motion should be denied.

### A.     A Stay Will Not Simplify The Issues Or Trial In This Case

Although courts in rare instances have chosen to issue discretionary stays pending the outcome of ITC proceedings on separate patents, they have done so only where the issues present

6

in the district court were so intertwined with those in the ITC that significant economies and efficiencies would be gained by waiting for the ITC action to conclude.  For example, courts have recognized that where a patent asserted in the ITC shares an identical common specification or prosecution history with another patent pending in a district court, claim-construction issues may be sufficiently intertwined that the district court might gain benefit from the ITC's prior analysis.  *See Sandisk Corp. v. Phison Elec. Corp.*, 538 F. Supp. 2d 1060, 1066 (W.D. Wis. 2008).  In such narrow circumstances, a stay of non-ITC patents may be warranted.

Courts have emphasized, however, that mere overlap in subject matter is not sufficient to stay non-ITC patent claims pending in district courts.  In *Humanscale Corp. v. Compx Int'l Inc.*, for instance, the court denied the plaintiff's motion to stay litigation regarding counterclaim patents that the plaintiff alleged to share the same technology as a patent asserted in a parallel ITC proceeding.  No. 3:09CV86, 2009 WL 1444312 (E.D. Va. May 21, 2009).  Although the counterclaim patents asserted in the district court shared the same subject matter as the patent asserted in the ITC — adjustable keyboard support systems — the court ruled that neither efficiencies nor economies warranted a stay given that the counterclaim patents did not share a specification, prosecution history, or familial relationship with the ITC patent.  *Id.* at *3-4. Because of these key differences, explained the court, most of its legal determinations regarding the counterclaim patents would not be considered by the ITC.  *Id*. at *4.

In *LG Elec., Inc. v. Eastman Kodak Co.*, the court similarly denied the defendant's motion to stay litigation regarding patents asserted in district court that were alleged to be substantially similar to patents asserted in a parallel ITC proceeding.  No. 09-CV-0344 H(BLM), 2009 WL 1468703 (S.D. Cal. May 26, 2009).  Despite the defendant's arguments that the district court and ITC actions involved the same accused devices, and that non-ITC district court patents were

substantially similar to, and related to technologies found in the devices accused of infringing the ITC patents, the court ruled that the patents were not similar enough to warrant the stay sought by the defendant.  *Id.* at *3-4.   In explaining its decision, the court emphasized that because the non-ITC district court patents did not share a specification, familial relationship, inventor or prosecuting attorney with an ITC patent, the ITC's determinations would not bear on the district court's decision-making.  *Id.* at *4.   The court denied the requested stay and ruled that cross-use of discovery between the ITC and district court actions was warranted regarding products accused of infringement in both actions.  *Id.*

> **1.     Given the lack of substantive overlap between the non-ITC and ITC patents, considerations of efficiency and economy do not warrant the all-encompassing stay HTC seeks**

As in Humanscale and LG, HTC's motion for a stay should be denied.  Put simply, considerations of efficiency and economy do not favor a stay because Apple's non-ITC patents are not substantively similar to the ITC patents.  Even HTC concedes a lack of substantive similarity regarding the majority of the non-ITC patents, as its opening brief does not allege any substantive similarity between the ITC patents and Apple's non-ITC '599, '105, '726, '354, '646, '116, and '453 patents.  Indeed, HTC cannot allege similarities because they simply do not exist. For one, none of these non-ITC Apple patents share a specification, familial history or prosecution history with an ITC patent.  Even more significantly, none of these non-ITC patents shares even a general focus in technology with the ITC patents.  The '726 and '453 patents, for instance, relate to power management.  The '646 and '116 patents relate to methods of connecting or disconnecting devices, such that a reboot is not required. The '599 and '354 patents relate to object oriented-programming, and the '105 patent is directed to reducing interference in wireless communications systems.  These technologies are simply not before the ITC.  Given this absolute lack of substantive similarity, the stay HTC seeks does not make sense.

8

Nor are the remaining, non-ITC '949, '076, '849 or '331 patents sufficiently similar to an ITC patent, such that considerations of efficiency or economy warrant the relief HTC seeks. Although, for instance, the ITC patents and these non-ITC patents generally relate to touch screen technology — the fact HTC seizes on — they do not share relevant similarities with the ITC patents, such that a stay is warranted.  Indeed, the ITC patents are in many respects directed to different aspects of touch screen technology than the non-ITC patents.  The '129 patent asserted in the ITC, for instance, is directed to the construction, design and materials of a touch sensor panel, whereas the non-ITC '949, '076 and '849 patents relate to ways in which touch screens respond to user input.

Moreover, the presence of any common claim terms or accused devices among the ITC patents and the non-ITC '949, '076, '849 and '331 patents does not justify the stay HTC seeks. Despite HTC's attempts to raise the specter of "common claim terms," the non-ITC '949, '076, '849 and '331 patents do not share a common specification or prosecution history with an ITC patent, meaning that very different claim-construction, validity and infringement analyses will be required for these non-ITC patents compared to those before the ITC.  HTC cannot overcome this crucial fact.  Further, overlap in accused products does not present grounds for stay as efficiency can be achieved simply through the cross use of discovery regarding HTC's accused products in the district court and ITC actions.   In sum, general technological similarity aside, the lack of relevant similarity between these patents and the ITC patents is fatal to HTC's motion. *See, e.g., Humanscale*, 2009 WL 1444312, at *3-4 (denying motion for stay because the non-ITC district court patents, though technologically similar to patents before the ITC, were not similar in legally relevant ways such that similar analyses would be required with respect to both sets of patents); *see also LG*, 2009 WL 1468703, at *3-4.  The motion should therefore be denied.

**2.      Given the lack of overlap among potential witnesses, considerations of efficiency and economy do not warrant the all-encompassing stay HTC seeks**

In addition to the lack of substantive similarity between the non-ITC and ITC patents, there is almost complete lack of overlap among individuals associated with these patents who may be called for deposition or trial.  Indeed, as set forth, eight of Apple's eleven non-ITC patents do not share a single inventor with an ITC patent.  And of the three non-ITC patents that do share an inventor with an ITC patent, only two of the twenty-five inventors listed on those patents are also listed as an inventor on an ITC patent.  Moreover, nine of Apple's eleven non-ITC patents were not prosecuted by an attorney who prosecuted an ITC patent.  Given this almost complete lack of overlap, considerations of efficiency will not be served by delaying the 167 and 544 cases until the 611 case's stay expires.

**3.      The stay HTC seeks will minimize, rather than create, efficiency**

HTC's motion should further be denied because instead of creating efficiency, the stay HTC seeks will actually minimize it.  As set forth, the non-ITC patents at issue in the 167 and 544 cases are different than those before the ITC.  Given that different claim-construction, validity and infringement infringes will thus predominate in the 167 and 544 cases, considerations of efficiency and economy warrant litigating these cases now — not waiting several years to litigate issues that will not be decided by the ITC, that can be litigated now, and that are being litigated now.  *See Kahn*, 889 F.2d at 1080 (vacating a stay and recognizing the "strong public policy favoring expeditious resolution of litigation.").  A stay will thus do nothing more than delay final resolution of litigation between Apple and HTC, thereby permitting HTC to continue its infringement of these patents for years to come.

**4.     Considerations of efficiency and economy do not justify the stay HTC seeks because ITC determinations are not binding on this Court**

HTC's claim that considerations of economy and efficiency warrant the relief it seeks is further undermined by the non-binding nature of an ITC determination.  Even involving identical patents, determinations of the ITC are simply not binding on this Court.  *See Texas Instruments Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996).  Here, no overlap exists between the non-ITC and ITC patents.  It is thus entirely speculative to assert, as HTC does, that the ITC's determinations will bear on this Court's analysis of the non-ITC patents.   For this additional reason, its motion should be denied.  *See LG*, 2009 WL 1468703, at *4 (rejecting defendant's argument that the ITC investigation of a similar patent would simplify the issues before the district court because ITC decisions are not binding on a district court).

**B.     The Stay HTC Seeks Will Undo Scheduling in the 167 and 544 Cases, Which Have Already Been Pending For More Than A Year**

The second factor that courts in this district typically consider when deciding motions to stay is the status of the litigation.  This factor also favors denying HTC's motion.  Indeed, both the 167 and 544 cases have been pending for more than a year and discovery is underway in each.  Moreover, given the infancy of the recently filed ITC action, the stay HTC seeks will likely last, and further delay resolution of these cases in this Court, for several additional years. Because it is entirely reasonable to assume this Court's docket will be full when the stay does expire, further exacerbating scheduling issues in this case, a stay is not warranted.  *See Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865-LPS, 2010 WL 5149351, at *3 (D. Del. Dec. 13, 2010) (denying motion to stay an early stage litigation, pending a USPTO reexamination, because the stay would not only have disrupted a schedule that was a challenge to reach, but would have prevented attempts at rescheduling for several years).

### C.      A Stay Will Unduly Prejudice Apple

HTC's motion should additionally be denied because the stay HTC seeks will unduly

prejudice Apple.  Indeed, the stay HTC seeks will prevent Apple, *a direct competitor of HTC*,

from seeking injunctive relief related to the HTC's accused infringement of eleven patents, for

*years to come*.  Given that monetary damages cannot adequately compensate Apple for its direct

competitor's widespread infringement of its patents, this strongly favors denying HTC's motion.

*See Kahn,* 889 F.2d at 1080 ("It is the duty of courts to avoid unnecessary delay in resolving the

rights of litigants."); *Boston Scientific*, 2011 WL 1398484, at *5 (emphasizing that because the

parties "directly compete in the [same market], this . . . factor disfavors a stay"); *Twitter*, 2010

WL 5149351, at *5 (emphasizing that "[c]ourts are reluctant to stay proceedings where the

parties are direct competitors.").

A stay will further prejudice Apple by making it unnecessarily difficult for Apple to

obtain the discovery relevant to it infringement case.  The District of Delaware recently

explained in *Twitter*, for instance, that multiple year stays between direct competitors are unduly

prejudicial to the non-moving party given their propensity to create issues of stale evidence,

faded memories, and lost documents, all of which make proving patent infringement

unnecessarily more difficult:

> Resuming this litigation after a protracted stay would likely raise issues with stale
> evidence, faded memories, and lost documents.  Much of the evidence [the non-
> moving party] must amass to prove infringement exists in the minds of witnesses,
> whose memories will inevitably fade, and who may be difficult to find as time
> passes.  Infringement will also depend to some extent on how Defendants'
> accused products and services function today, which will be harder to prove years
> from now.  By contrast, some of the matters on which Defendants bear the
> burden, such as invalidity . . . due to anticipation or obviousness, may not grow
> more difficult to prove, as they are based largely on prior art references, which do
> not change.

*Twitter*, 2010 WL 5149350, at *4; *see also Clinton*, 520 U.S. at 708 (reversing a stay to avoid "the danger of prejudice resulting from the loss of evidence, including the inability of witnesses to recall specific facts. . . ."); *LG*, 2009 WL 1468703, at *2 (denying motion for stay and recognizing "the unavoidable risk that important documents might be lost during the delay caused by a stay in this case.").

Because the concerns espoused in *Twitter* are front and center here, the stay HTC seeks should be denied as unduly prejudicial to Apple.  Given the infancy of the ITC action, the stay HTC seeks will realistically last several years, and in turn, significantly prejudice Apple's ability to conduct discovery when the stay is lifted.   Indeed, notwithstanding the inherent complexities in proving infringement based on records and witnesses located in Taiwan, HTC's requested stay would also force Apple to confront the real possibility of stale evidence, faded memories, and lost documents when the stay does expire.  The risk of valuable discovery being lost is further magnified by the fact that third parties likely possess information relevant to this case.  *LG*, 2009 WL 1468703, at *2 (emphasizing that the risk of important documents being lost as a result of a stay is greater when the documents are under the control of third parties.)  In contrast, a stay will not similarly affect HTC's ability to prove its case, as the prior art HTC will rely on in its invalidity case can be expected to be available years from now as it is today.  *See Twitter*, 2010 WL 5149350, at *4 (explaining that a long stay disproportionately prejudices the party tasked with proving infringement).  Because the stay HTC seeks will disproportionately prejudice Apple, HTC's motion should be denied.

### D.    The Cases HTC Relies On Are Inapposite To The Situation Here

In support of its motion, HTC relies on several cases granting stays to allow for the conclusion of parallel ITC or USPTO reexamination proceedings.  Given the significant factual differences with the situation here, those cases are not persuasive.  In *Sandisk Corp. v. Phison*

13

*Electronics Corp.*, for instance, the Western District of Wisconsin stayed litigation regarding district court patents not at issue in an ITC action where the district court patents not only shared the same specific technology (flash memory) and claim terms with an ITC patent, but also **shared** a **specification and prosecution history**.  538 F. Supp. 2d 1060 (W.D. Wis. 2008).  Based on these significant similarities, and the resulting reasonable likelihood that the same claim-construction disputes would be before the ITC and the district court, the court granted a stay.  *Id.* at 1066-67.

Similarly, in *FormFactor, Inc. v. Micronics Japan Co., Ltd.*, another case relied on by HTC, the Northern District of California stayed litigation of district court patents not at issue in a parallel ITC proceeding, where the district court patents related to ***the same specific technology*** ("the assembly of probe cards for testing semiconductor chips"), ***were from the same patent family,*** and ***shared inventors*** with the ITC patents.  No. CV-06-07159 JSW, 2008 WL 361128 (N.D. Cal. Feb. 11, 2008).  The court emphasized that because the district court and ITC patents were directed to the same technology and were from the same patent family, the ITC's claim-construction would inform the district court's claim-construction analysis as well.  *Id.* at *2-4. The court also noted a significant overlap in expected witnesses.  *Id.* at *2.

Neither *Sandisk* nor *FormFactor*, however, justifies the relief HTC seeks.  First, unlike in those cases, where the district court patents related to the same specific technology as the ITC patents, Apple's asserted patents cover a range of technologies.  HTC admits as much in its opening brief, noting that Apple's patents cover different technologies, such as "power management, signal processing, graphical user interfaces, hardware pairing, and touch screen processing."  (1:10-00167-GMS, D.I. 68 at 8.)  Second, unlike in *Sandisk* and *FormFactor,* none of Apple's non-ITC patents derives from or shares a specification or prosecution history with an

14

ITC patent.  Thus, in construing the non-ITC Apple patents, the district court will necessarily rely on different evidence, and conduct a different analysis, than will be required of the ITC with respect to the ITC patents.  Third, unlike in *FormFactor*, there is little overlap between the inventors of the non-ITC patents and the ITC patents.  Thus, denying HTC's motion will not result in these individuals being called for deposition or trial multiple times.  Given the significant factual differences between *Sandisk, FormFactor* and the facts presented here, HTC's motion should be denied.

Similarly unpersuasive is HTC's reliance on two District of Delaware cases granting stays pending patent reexaminations — *Pegasus Dev. Corp. v. DirecTv, Inc., Inc* and *Alloc, Inc. v. Unilin Décor N.V.*  In *Alloc, Inc. v. Unilin Décor N.V.,* the district court granted a motion to stay litigation regarding a patent only at issue in the district court, pending completion of a reexamination proceeding and ITC appeal regarding four non-overlapping ITC patents.  No. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003).  The patent-at-issue in the district court, however, was a ***continuation*** of the non-overlapping patent subject to the Federal Circuit appeal, and was from ***the same patent family*** as the additional three non-overlapping ITC patents.  *Id.* at *1-2.  Based on those significant similarities, the Court determined that the reexamination proceeding would narrow the issues for consideration before the district court and granted the motion for a stay.  *Id.* at *2.  Unlike in *Alloc*, however, none of Apple's non-ITC patents share a specification with an ITC patent, or are directly related to an ITC patent, such that the ITC's claim-construction analyses will bear on issues before the district court.  Thus, *Alloc* does not support the relief HTC seeks.

Nor does *Pegasus Devel. Corp. v. DirecTv, Inc., Inc.* support HTC's motion.  In that case, the district court granted the defendant's motion to stay litigation of six patents where one of the

15

patents was also the subject of a USPTO reexamination.  No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003).  A stay was warranted, explained the court, because **the same patent** was before it and the USPTO, such that the court would benefit from the USPTO's prior rulings with respect to that patent.  *Id.* at *1-2.  The court further highlighted that the reexamination had the potential to dispose of the entire litigation, thus relieving it from the review of hundreds of patent applications related to the patent undergoing reexamination during its claim-construction analysis.  *Id.* at *2.  The situation in *Pegasus*, however, is entirely dissimilar from the facts of this case.  Unlike in *Pegasus*, there is no patent before both the ITC and district court, such that the ITC would consider exactly the same issues as the district court.  Also unlike *Pegasus*, where a determination of invalidity on reexamination would have resulted in the dismissal of claims in the district court action, the ITC's determinations with respect to the ITC patents are not binding on this Court.  As set forth, it is thus entirely speculative to claim — as HTC does — that the ITC's determinations will have any relevance to this Court's analysis of the non-ITC patents.

### E.   Apple's Opposition to HTC's Transfer Motion Does Not Support HTC's Motion To Stay

HTC also argues that Apple's arguments in support of its Opposition To HTC's Motion To Transfer support its requested stay.  HTC is incorrect.  Apple argued in its Opposition that considerations of economy favored keeping the 166, 167 and 544 cases before the same court and same judge because they involved overlapping technologies and issues of law and fact.  (1:10-00544-GMS, D.I. 14 at 8-9.)  This does not justify the relief HTC seeks.  The issue here is whether the non-ITC patents asserted in the 167 and 544 cases are so similar to those before the ITC, most of which were also asserted in the 611 case, that considerations of efficiency and economy warrant a stay.  Apple's Opposition offered no analysis whatsoever of the patents

16

asserted in the 611 case or their similarity to the patents asserted in the 167 or 544 cases.  Indeed, as extensively set forth above, they are largely dissimilar in ways that count for stay purposes.

Moreover, it does not follow, as HTC alleges, that because the Court determined the 166, 167 and 544 cases should remain in the District of Delaware, Apple must litigate these cases on the same schedule as any additional patent-infringement claims it files with respect to technologies implementable in smartphones.  As set forth in Apple's Opposition to HTC's Motion to Transfer, considerations of economy warranted denying HTC's motion to transfer, and having a single judge hear the 166, 167 and 544 cases.  These same considerations do not, however, warrant delaying Apple's claims related to the non-ITC patents at issue in the 167 and 544 cases.  These non-ITC patents are different than those before the ITC, will require different analyses and should thus be litigated now.

## CONCLUSION

For the reasons set forth above, Apple respectfully requests that the Court deny HTC's motion to stay all litigation regarding the '599, '105, '726, '646, '354, '331, '116, '453, '949, '076 and '849 patents, which Apple is currently asserting against HTC in the 167 and 544 cases.


Dated:  August 19, 2011                       MORRIS JAMES LLP

                                              _ /s/ Richard K. Herrmann_____
                                              Richard K. Herrmann (# 405)
                                              Mary B. Matterer (# 2696)
                                              500 Delaware Avenue, Suite 1500
                                              Wilmington, Delaware 19801
                                              Telephone:  (302) 888-6800
                                              rherrmann@morrisjames.com

                                              *Of Counsel:*

                                              Robert G. Krupka, P.C.
                                              KIRKLAND & ELLIS LLP
                                              333 South Hope Street
                                              Los Angeles, California 90071
                                              Telephone:  (213) 680-8400

17

Gregory S. Arovas, P.C.
Steven Cherny
Robert A. Appleby
James E. Marina
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:  (212) 446-4800

Kenneth H. Bridges
Michael T. Pieja
Brian C. Kwok
BRIDGES & MAVRAKAKIS LLP
3000 El Camino Real
One Palo Alto Square, 2nd Floor
Palo Alto, California 94306
Telephone:  (650) 804-7800

Mark Fowler
DLA PIPER LLP (US)
2000 University Avenue
East Palo Alto, California 94303-2248
Telephone:  (650) 833-2000

Elizabeth Day
David Alberti
Clayton Thompson
Yakov Zolotorev
FEINBERG DAY ALBERTI & THOMPSON
LLP
401 Florence Street, Suite 200
Palo Alto, California 94301
Telephone:  (650) 618-4360

*Attorneys for Apple Inc.*